IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| WILLIAM PARKER, | ) | |
| | ) | No. 2:23-cv-2102 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| EDWARD C. GAINEY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT CITY OF PITTSBURGH'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

## I. INTRODUCTION

Plaintiff William Parker's ("Mr. Parker") Complaint fails to state a claim against the City of Pittsburgh ("City"). First, Mr. Parker attempts to allege constitutional violations against the City under a theory of *respondeat superior*, appearing to argue the City is vicariously liable for the acts of its employees. Such a claim is not a permissible theory of municipal liability under 42 U.S.C. § 1983. Second, to the extent Mr. Parker's Complaint includes a *Monell* claim against the City, the Complaint does not plead sufficient facts to support this claim under any theory of *Monell* liability. Mr. Parker does not identify a policymaker responsible for the alleged policies at issue or a widespread pattern of behavior that would establish a "custom." Mr. Parker likewise fails to point to other incidents of constitutional violations showing that the City should have been aware officers were in need of additional training, discipline, and supervision. Moreover, and critically, Mr. Parker

1

fails to sufficiently plead a causal connection between the alleged policies, customs, and/or failures identified in his Complaint and his alleged Constitutional injuries. Because Mr. Parker's Complaint fails to sufficiently state a viable *Monell* claim against the City, all claims against the City should be dismissed.

## II. BACKGROUND[1]

On June 17, 2023, Mr. Parker attended the City's Juneteenth Parade to protest several of Mayor Gainey's mayoral decisions. ECF No. 1 ¶¶ 7-8. While he was protesting, Mr. Parker claims he was pushed by Defendant Detective Kerry Ford. *Id.* at ¶ 10. Mr. Parker then claims Defendant Detective Michael Gay then "followed[ed] close behind [Mr. Parker], running into [Mr. Parker] several times." *Id.* at ¶ 11. After this alleged contact, Mr. Parker claims Defendant Bethany Hallam intentionally "bumped" Mr. Parker several times "with a great deal of force." *Id.* at ¶ 12. Mr. Parker claims that after he asked Ms. Hallam to stop bumping into him, Detective Gay also "bumped" Mr. Parker. *Id.* at ¶ 13.

Mr. Parker claims that Defendant Chief Larry Scirotto then approached Detective Gay and Mr. Parker and stated, "Take him to the ground now, arrest him." *Id.* at ¶ 14. Detective Ford, Detective Gay, and Chief Scirotto then used varying degrees of force to take Mr. Parker into police custody and handcuff him. *Id.* at ¶¶ 15-16. Mr. Parker further alleges that another police officer, Defendant Lawrence Ferrilli, twisted Mr. Parker's arm while Mr. Parker was in custody. *Id.* at ¶ 19.

---

[1] The City summarizes and accepts as true facts alleged in Mr. Parker's Complaint for purposes of this Motion to Dismiss only.

Plaintiff was then transported to the Allegheny County Jail ("ACJ"). *Id.* at ¶ 21. Mr. Parker claims he was charged with four unspecified felony offenses and four counts of disorderly conduct. *Id.* at ¶ 22. Mr. Parker alleges that Detective Ford filed the affidavit of probable cause in support of the criminal charge against Mr. Parker *Id.* at ¶ 27. The criminal charges were ultimately withdrawn. *Id.* at ¶ 23. Mr. Parker claims he sustained physical injuries, emotional harm, and damage to his reputation as a result of this incident. *Id.* at ¶ 31.

Mr. Parker's Complaint also details alleged policies, customs, and failures he attributes to the City. Mr. Parker claims that City has the following policies, customs, or practices:

- "Authorizing an officer to file an affidavit of probable cause containing allegations unrelated to the citizen accused of a crime based upon that affidavit, allowed them to arrest citizens without having to account for such arrest by swearing under oath to facts supporting the arrest or use of force used." *Id.* at ¶ 29.

- "Promoting to supervisory ranks officers who have been adjudged to have violated citizen's constitutional rights[.]" *Id.* at ¶ 46.

- "Participating in the defense of and otherwise defending City of Pittsburgh police officers accused of violating citizens' constitutional rights, when the City knows, has reason to believe, and/or has otherwise concluded that the officer's conduct was abusive and/or rose to the level of a crime, was carried out with malice, and/or rose to the level of willful misconduct[.]" *Id.* at ¶ 46.

- "Using standard form affidavits to justify the arrest and filing of criminal charges against citizens engaged in peaceful protests where the officer swearing to the truth of the allegations set forth in the affidavit in reality has no knowledge of the facts supporting the charges and where the officers who initiated the arrests are accordingly not required to swear to the truth of the allegations supporting the citizen's arrest, the filing of charges against that citizen, or the use of any force in carrying at the arrest. *Id.* at ¶ 47.

Mr. Parker's Complaint also includes claims related to alleged failures of the City, claiming the City fails to and/or refuses to discipline officers who violate citizens rights. *Id.* at ¶ 46. He further claims that the City fails to property train and/or supervise officers responding to citizen protests, specifically Mr. Parker's protests against Mayor Gainey. *Id.* at ¶¶48-49.

### III.  STANDARD OF REVIEW

To survive a motion to dismiss, complaints must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plaintiff must allege facts sufficient to "'raise a right to relief beyond a speculative level.'" *Robinson v. Family Dollar, Inc.*, 679 F. App'x 126, 131 (3d Cir. 2017). Though courts must accept all well-pleaded facts as true, this obligation does not extend to legal conclusions "couched as . . . factual allegation[s]." *Twombly*, 550 U.S. at 555. Moreover, plaintiffs "[can]not attempt to use discovery as a fishing expedition to determine the existence of . . . facts necessary to establish a legally adequate [claim]." *White v. Hon Co.*, 520 F. App'x 93, 95 (3d Cir. 2013).

The City acknowledges that where, as here, a complaint is filed *pro se*, the Court "must be mindful to construe it liberally in favor of the plaintiff." *Hoye v. Allegheny Cty. Med. Dep't*, Civil Action No. 2: 23-cv-1648, 2023 U.S. Dist. LEXIS 195136, at *3 (W.D. Pa. Sep. 26, 2023) (Eddy, J.). However, liberal construction is not

4

without limits; it "does not require the Court to credit a *pro se* plaintiff's bald assertions or legal conclusions." *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (internal quotations omitted; citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). A *pro se* complaint should still be dismissed if it "cannot be construed as supplying facts to support a claim entitling the plaintiff to relief." *Id.* (citing *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981)).

## IV.   ARGUMENT

Given the Third Circuit's directive that a *pro se* complaint be construed liberally, the City attempts to address all conceivable theories of liability against the City based on the facts alleged and language used in Mr. Parker's Complaint. Construed broadly, Mr. Parker's Complaint sets forth six claims against the City: (1) Fourth Amendment excessive force under a theory of *respondeat superior*; (2) Fourth Amendment false arrest under a theory of *respondeat superior*; (3) Fourth Amendment malicious prosecution under a theory of *respondeat superior*; (4) Fourth Amendment retaliation under a theory of *respondeat superior*; (5) *Monell* claim alleging unconstitutional policies or customs; and (6) *Monell* claim alleging a failure to train, discipline, and supervise employees.

All claims against the City should be dismissed at this early stage because the City cannot be held vicariously liable for the acts of its employees, and the Complaint fails to allege any facts showing that any policy, custom, or failure of the City caused Mr. Parker's alleged Constitutional injuries.

### A.   Mr. Parker's Complaint fails to state a claim for *Monell* liability against the City under a theory of *respondeat superior.*

5

Mr. Parker's claim that the City is vicariously liable for the actions of its employees is not a cognizable claim under Section 1983 and should be dismissed. In an action brought pursuant to 42 U.S.C. § 1983, "[a] municipality cannot be held liable for the unconstitutional acts of its employees on a theory of *respondeat superior*." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in original; internal quotations omitted) ("under § 1983, local governments are responsible only for their *own* illegal acts"); *Parker v. Butler Cty. Pa.*, Civil Action No. 2:18-cv-911, 2019 U.S. Dist. LEXIS 149284, at *12 (W.D. Pa. Sep. 3, 2019) ("municipal liability may not be premised on the mere fact that the governmental unit employed the offending official."). Rather, the plaintiff must allege that the municipality's "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694.

Mr. Parker includes the City as a named defendant in Count A (Fourth Amendment Use of Excessive Force), Count B (Fourth Amendment False Arrest), Count C (Fourth Amendment Malicious Prosecution), Count D (First Amendment Retaliation) and part one[2] of Count E (First Amendment Retaliation, Fourth Amendment Use of Force, False Arrest, and Malicious Prosecution). Counts A, B, C,

---

[2] The City has separated Count E into parts one and two for purposes of the instant motion. Count E, part one includes Mr. Parker's First Amendment Retaliation and Fourth Amendment Use of Force, False Arrest, and Malicious Prosecution claims. Part two includes his Fourteenth Amendment Failure to Train, Discipline, or Supervise claim, which the City interprets as a *Monell* claim.

6

and D do not include facts related to any policies or customs of the City. Instead, the allegations center on the alleged actions of its employees: Mayor Gainey, Chief Scirotto, Officer Ford, Officer Ferrilli, and co-defendant, Bethany Hallam. (ECF No 1, ¶¶ 35, 37, 39-40, 42-44). Based on the allegations in these Counts, it appears Mr. Parker is alleging that the City is liable for the acts of its employees. Because Section 1983 municipal liability cannot arise under a *respondeat superior* theory, Mr. Parker's claims against the City in Counts A, B, C, and D fail as matter of law and should be dismissed, with prejudice. *See Monell*, 436 U.S. at 690.

With respect to part one of Count E, which sets forth claims of First Amendment Retaliation and Fourth Amendment Use of Force, False Arrest, and Malicious Prosecution against the City, these claims likewise fail. It also includes an additional allegation that Chief Scirotto was not "certified by the State of Pennsylvania." (ECF No. 1, ¶ 50). First, the claims are duplicative and redundant of the claims set forth against the City in Counts A, B, C, and D. *See Sprauve v. W. Indian Co.*, 799 F.3d 226, 235 n.11 (3d Cir. 2015) (affirming the district court's dismissal of redundant claims that arose from the "same basic events"); *see also Capogrosso v. Supreme Court of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009); *Rogin v. Bensalem Twp.*, 616 F.2d 680, 686 (3d Cir. 1980). Second, part one of Count E incorporates the factual allegations against individual City employees (ECF No. 1, ¶ 45), as well as the details of his own arrest (*id.*, ¶ 50), in support of these claims. It appears that Mr. Parker is again alleging that the City is responsible for the alleged acts of its employees, who he alleges violated his First and Fourth Amendment rights.

7

Thus, to the extent Mr. Parker sets forth a claim for municipal liability under a theory of *respondeat superior*, this claim fails. *See Monell*, 436 U.S. at 690. Mr. Parker's claims for municipal liability in Counts A, B, C, D, and part one of Count E, therefore fail as a matter of law and should be dismissed, with prejudice.

> **B.      Mr. Parker's Complaint fails to sufficiently plead that a City decisionmaker enacted a policy that caused his alleged Constitutional injuries.**

Mr. Parker's claims related to the City's alleged unconstitutional policies fail because he cannot connect these alleged policies to any decisionmaker with policymaking authority. For purposes of *Monell* liability, "[p]olicy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Andrews v. Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (internal quotations omitted).

To sufficiently state a claim for *Monell* liability on the basis of a municipal policy, a plaintiff must plead the following: "(1) a policy or lack thereof; (2) a policy maker that effectuated said policy; and (3) a constitutional violation whose moving force was the policy in question." *D.M. v. Easton Area Sch. Dist.*, No. 17-1553, 2017 U.S. Dist. LEXIS 210600, at *18 (E.D. Pa. Dec. 21, 2017); *see also Hill v. City of Phila.*, No. 16-3868, 2017 U.S. Dist. LEXIS 120425, at *6-7 (E.D. Pa. Aug. 1, 2017) ("To satisfy the pleading standard, *Monell* requires the plaintiff to allege facts showing that municipal policymakers established a policy or custom which was the moving force behind the constitutional violation experienced.").

The connection between an alleged policy and an individual with decision-making authority is critical. In *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009), the Third Circuit held that the plaintiffs' failure to allege conduct of a municipal decisionmaker was "fatal" to his *Monell* claim. In *McTernan*, the plaintiffs claimed that police officers restricted their ability to protest outside of a reproductive health clinic. *Id.* at 641. The plaintiffs attempted to claim that the municipality had a policy of "ignoring First Amendment rights," and in support of their claim, alleged that police officers periodically instructed the plaintiffs to leave the area. *Id.* at 658. Because the plaintiffs failed to plead that a decisionmaker was aware of, let alone directed, these restrictions, the plaintiffs failed to establish the required link between the "challenged restriction and a municipal decisionmaker." *Id.* at 658-59. Thus, the Third Circuit determined that the district court properly dismissed the plaintiffs' *Monell* claim at the motion to dismiss stage. *Id.* at 659.

Here, although Mr. Parker describes alleged policies, (ECF No. 1, ¶¶ 29, 46, 47), he fails to allege conduct by a City decisionmaker. The only fact Mr. Parker includes in reference to this policy is the allegation that Officer Ford authored the affidavit of probable cause in support of Mr. Parker's arrest although Mr. Ford "had not personally witnessed the altercation between the plaintiff and defendants' (sic) Bethany Hallam and Michael Gay." (ECF No. 1, ¶ 27). Mr. Parker's allegation that, on one occasion, a police officer authored an affidavit without "personally witness[ing]" the event falls far short of establishing a connection between the alleged policy at issue and a City decisionmaker. *See McTernan*, 564 F.3d, 658-69. Like the

9

plaintiffs in *McTernan,* Mr. Parker has failed to plead that a City decisionmaker was aware of, let alone directed, Officer Ford to engage in the alleged unconstitutional conduct at issue.³ *Id.* Thus, without such facts, Mr. Parker's allegation regarding the City's alleged policy is merely a recitation of one theory of *Monell* liability. *See Wood v. Williams*, 568 F. App'x 100, 104 (3d Cir. 2014) (emphasis added) ("Simply paraphrasing section 1983 . . . fails to satisfy the *rigorous standards* of culpability and causation necessary to state a claim for municipal liability."). This recitation, without more, is insufficient to sufficiently plead that the City, through its decisionmakers, is liable for Mr. Parker's alleged constitutional injuries. Mr. Parker's claim for *Monell* liability on the basis of an alleged City policy should be dismissed.

      **C.    Mr. Parker's Complaint fails to sufficiently plead that the City had a custom that caused his alleged Constitutional injuries.**

To the extent Mr. Parker alleges the policies identified in Paragraphs 29, 46, and 47 constitute "customs" of the City, this claim likewise fails. Mr. Parker's Complaint fails to identify incidents of similar alleged misconduct that would constitute a "custom" of the City and fails to identify a decisionmaker responsible for the customs at issue. For purposes of *Monell* liability, "[a] course of conduct is considered to be a 'custom' when, though not authorized by law, such practices of

---

³ It is unclear what constitutional right is implicated when a police officer files an affidavit of probable cause on the basis of information received from other individuals. Mr. Parker claims the policy at issue allows officers who have "no knowledge of the facts supporting the charges" to file charges, but only alleges that Officer Ford did not personally witness the events at issue. (ECF No. 1, ¶¶ 27, 47). Mr. Parker does not allege that Officer Ford lacked knowledge of the events that transpired, whether through information received from other officers or some other source.

state officials [are] so permanent and well settled as to virtually constitute law." *Andrews*, 895 F.2d at 1480 (quoting *Monell*, 436 U.S. at 690). Like municipal policies, a municipal custom must be attributed to a policymaker. *Andrews*, 895 F.2d at 1480 ("it is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom"); *see also Hill*, 2017 U.S. Dist. LEXIS 120425, at *9 ("Plaintiff's claim against [the municipality] necessarily fails because Plaintiff does not identify or allege a municipal policymaker or decisionmaker who was aware of or directed the municipal policy or custom at issue.").

The Supreme Court has held that proof of a single incident of "unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985). The Third Circuit explained the rationale underlying this rule: "[A] single incident of police misbehavior by a single policeman is insufficient as sole support for an inference that a municipal policy or custom caused the incident." *Brown v. City of Pittsburgh*, 586 F.3d 263, 292 (3d Cir. 2009) (citing *Tuttle*, 471 U.S. at 832 (Brennan, J., concurring)); *Minor v. Cumberland Twp.*, 258 F. Supp. 3d 518, 528 (W.D. Pa. 2017) ("as a general rule, an isolated incident, however unfortunate, does not demonstrate evidence of [an agency's] persistent and widespread policy and will not be considered so pervasive as to be a custom or practice.").

Here, Mr. Parker only points to his own arrest as evidence of the alleged customs at issue described in Paragraphs 29 and 47 of his Complaint (ECF No. 1, ¶ 27, 29, 47). In fact, Mr. Parker's own arrest does not fall squarely within the alleged custom he described. Mr. Parker merely alleges that Officer Ford did not personally witness the events at issue; he does not allege that Officer Ford lacked any knowledge whatsoever about the facts supporting the charges filed against Mr. Parker or included "allegations unrelated to [Mr. Parker]". (ECF No. 1, ¶¶ 27, 29, 47). However, even if Mr. Parker's own arrest is evidence of the City's alleged custom, this single incident is insufficient to plead *Monell* liability on the basis of a municipal custom. *See Brown*, 586 F.3d at 292.

With respect to the claims related to "customs" described in Paragraph 46, related to the City's alleged promotion and legal defense of officers who have committed constitutional violations, Mr. Parker's Complaint does not point to a single incident of this occurring, let alone a practice "so permanent and well settled as to virtually constitute law." *Andrews*, 895 F.2d at 1480 (quoting *Monell*, 436 U.S. at 690). Mr. Parker does not even allege that the officers involved in his own arrest were promoted and/or provided legal defense after being found liable for constitutional violations. Without facts related to a single incident of this alleged custom, Mr. Parker's claim fails.

Finally, Mr. Parker does not connect any of these alleged customs to a City decisionmaker. Without this connection, he lacks the factual support necessary to

survive a motion to dismiss. *See id.* For these reasons, Mr. Parker's claim for *Monell* liability on the basis of an alleged City custom should be dismissed.

### D. Mr. Parker fails to state a *Monell* claim against the City for failure to train, discipline, or supervise its officers.

Mr. Parker's *Monell* claims against the City for failure to train, discipline, and supervise its officers fails because the Complaint lacks facts showing that the City itself was deliberately indifferent to citizens' constitutional rights. A municipality's failure to train, supervise, or discipline its employees may result in liability where the failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick,* 563 U.S. at 61. Thus, the Third Circuit has explained that establishing "municipal liability on a failure to train claim under § 1983 is difficult." *Reitz v. Cty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997).

Plaintiffs may plead a municipality's deliberate indifference in one of two ways. First, a plaintiff may attempt to show a "pattern of similar constitutional violations by untrained employees." *Estate of Paone v. Plymouth Twp.*, No. 22-2178, 2022 U.S. Dist. LEXIS 218251, at *13 (E.D. Pa. Dec. 5, 2022). This approach can be used to show "city policymakers [were] on actual or constructive notice that a particular omission in their training program cause[d] city employees to violate citizens' constitutional right[.]" *Connick*, 563 U.S. at 61. Thus, a municipality "may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.* Second, a plaintiff may attempt to show deliberate indifference in a failure-to-train claim by showing

13

that "the need for training in particular circumstances is 'so obvious' that a failure to do so would amount to deliberate indifference." *Estate of Paone*, 2022 U.S. Dist. LEXIS 218251, at *13.

When analyzing complaints attempting to plead deliberate indifference through a pattern of constitutional violations, courts in the Third Circuit routinely reject *Monell* failure-to-train claims that do not point to prior instances of similar misconduct. *See Wood*, 568 F. App'x at 105; *Deemer v. City of Oil City*, No. 1:19-CV-380, 2021 U.S. Dist. LEXIS 182885 (W.D. Pa. Sept. 24, 2021) (dismissing claim when plaintiff did not allege any facts about police training, or contain allegations of prior misconduct caused by allegedly inadequate supervision and training); *Thivener v. Nero*, No. 22-238, 2023 U.S. Dist. LEXIS 114010, at *5–*6 (W.D. Pa. June 30, 2023) ("Dismissal of Plaintiff's *Monell* claim is also warranted. Plaintiff does not attempt to identify prior, similar incidents revealing a pattern of constitutional violations.").

Vague, unsupported allegations regarding deficiencies and conclusory statements do not establish a history of misconduct that put a municipality on notice to a risk of constitutional injuries. For example, in *Wood*, the complaint alleged that the defendant "fail[ed] to adopt necessary and appropriate policies" on the First Amendment, and that employers "were known to tolerate or encourage Constitutional violations." 568 F. App'x at 103–04. On appeal, the Third Circuit affirmed the dismissal of the *Monell* claim, because the facts alleged did not support an inference that the defendant was on notice of a risk of retaliation for First Amendment protected speech, or that the defendant was deliberately indifferent to that risk. *Id.*

at 106. Overall, "mere conclusory allegations . . . that the defendants deliberately elected not to train are not enough to support a constitutional claim." *Freedman*, 853 F.2d at 1117.

Similar conclusory statements make up the entirety of Mr. Parker's *Monell* claim. Mr. Parker attempts to show the City's deliberate indifference by alleging that the City failed to discipline officers who had violated citizens' Constitutional rights (ECF No. 1, ¶ 46) and failed to train police officers in responding to citizens' protests (*id,* ¶ 49). With respect to the failure to discipline claim, Mr. Parker does not identify a single City police officer who was not disciplined after violating a citizen's constitutional rights. In support of his failure to train claim, Mr. Parker does not point to any incidents, other than his own interaction with the police, that shows a "pattern" of alleged constitutional violations. When legal conclusions are disregarded, Mr. Parker has failed to plead any facts showing that the City was on notice of a risk of Constitutional violations such that its failure to train, supervise, or discipline amounted to deliberate indifference.

With respect to "single incident" *Monell* liability for failure to train, a plaintiff must plead facts showing "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights[.]" *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). To demonstrate deliberate indifference from a "single-incident violation," the plaintiff must show "the risk of injury [was] a 'highly predictable consequence' of the municipality's failure to train or supervise its

15

employees." *Santiago v. City of Harrisburg*, No. 1:19-CV-898, 2020 U.S. Dist. LEXIS 50359, at \*29 (M.D. Pa. Mar. 20, 2020) (quoting *Thomas*, 749 F.3d at 225).

In *Santiago*, the plaintiff claimed that a municipality failed to train its officers regarding vehicle pursuits. *Id.* at \*30. In analyzing the claim on the municipality's motion to dismiss, the district court explained the burden the plaintiff bears in pleading a "single-incident" failure-to-train case: "in single-incident cases, a plaintiff must plead facts that support the likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights." *Id.* When the district court applied this standard to the plaintiff's claims, the district court found that "the complaint vaguely asserts that the defendants knew that there would be instances in which police officers pursued vehicles, and that the defendants knew a vehicle pursuit could result in a vehicle crash." *Id.* at \*31. These allegations, without more, were "simply not enough to impose liability on the [municipality]." *Id.* Thus, when the need for more or better training is not so obvious, a municipality itself cannot be liable. *See Brown v. Evans*, No. 1:21-cv-651-SB, 2021 U.S. Dist. LEXIS 206011, at \*13 (D. Del. Oct. 25, 2021) (dismissing *Monell* claim that failed to "provide any facts to suggest that the need for more training would have been plainly obvious to the city policymakers.")

Here, Mr. Parker appears to allege that the City failed to train its officers to respond to citizen protests, specifically his own. (ECF No. 1, ¶ 49) ("the City was . . . aware that the plaintiff had previously held several peaceful protests against the Defendant Edward C. Gainey and despite such notice and/or knowledge failed to

16

properly train and/or supervise its police officers in responding to such protests"). Like the plaintiff in *Santiago*, the complaint merely asserts that because Mr. Parker had protested previously, the City should have trained its officers to better respond to citizen protests. *Id.*, ¶ 49. This falls short of the requirement that Mr. Parker plead facts showing "support the likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights." *Santiago*, 2020 U.S. Dist. LEXIS 50359, at *30. Thus, Mr. Parker fails to plead facts to meet the stringent standard of single-incident *Monell* liability for failure-to-train, and his claim should be dismissed.

### E. Mr. Parker's allegations do not plausibly demonstrate that the City caused his alleged Constitutional injuries.

Under any theory of *Monell* liability, the plaintiff must plead facts showing that the City's policy, custom, or failure/inadequacy was the "moving force" behind his alleged injuries. *Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 399 (1997) ("plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged"); *Reitz*, 125 F.3d at 145 (applying the "moving force" requirement in the context of a failure-to-train claim).

The causation requirement is critical; a plaintiff's failure to set forth facts showing a causal connection between a municipal policy, custom, or failure and his alleged constitutional injury is fatal to a claim for *Monell* liability. *See Casciano v. City of Paterson*, Civil Action No. 19-9475, 2022 U.S. Dist. LEXIS 9293, at *13 (D.N.J. Jan. 19, 2022) (dismissing a *Monell claim* where the plaintiff failed to "explain the causal link between the execution of the policy and the injury suffered"); *Hill,* 2017

U.S. Dist. LEXIS 120425, at *8 (dismissing a *Monell* claim where the plaintiff did not "allege any facts that provide support for the claim that a municipal custom or policy exists, much less that an official custom or policy caused the harm alleged here").

Here, Mr. Parker fails to plead any facts demonstrating a causal connection between any alleged City policy, custom, or failure and his alleged injuries. Specifically, he fails to plead facts showing how the alleged policies and customs described in Paragraphs 29, 46, and 47 caused individual defendants to engage in excessive force, false arrest, malicious prosecution, or First Amendment retaliation. (ECF No. 1, generally). Mr. Parker merely states in a conclusory manner that the City's policies, customs, and practices were the "moving force" behind these alleged constitutional violations. (ECF No. 1, ¶ 51). This recitation of one *Monell* factor is insufficient to establish a causal nexus.

Furthermore, Mr. Parker likewise fails to allege how an alleged deficiency in the City's training, discipline, or supervision of its employees caused, or was the "moving force," behind his alleged Constitutional injuries. Mr. Parker simply concludes that the City caused the alleged violations of his constitutional rights without any factual support to buttress this legal conclusion. (ECF No. 1, ¶ 51). Again, such threadbare recitations of the elements of *Monell* are insufficient to survive a motion to dismiss. *See Fowler*, 578 F.3d at 210. Because of these deficiencies, Mr. Parker's *Monell* claim should be dismissed.

## V. CONCLUSION

For the foregoing reasons, Mr. Parker's claims against the City should be dismissed.

Respectfully submitted:

KRYSIA KUBIAK
City Solicitor

*/s/ Hillary M. Weaver, Esq.*
Hillary M. Weaver, Esq.
Assistant City Solicitor
PA ID No. 322545

*/s/ Julie E. Koren, Esq.*
Julie E. Koren, Esq.
Associate City Solicitor
PA ID No. 309642

City of Pittsburgh Law Department
414 Grant Street
Pittsburgh, PA 15219
Hillary.Weaver@pittsburghpa.gov
Julie.Koren@pittsburghpa.gov
*Counsel for Defendant City of Pittsburgh*

## CERTIFICATE OF SERVICE

I certify that on February 16, 2024, a true and correct copy of this document was served upon the Plaintiff by First Class United States mail to his address of:

William Parker (Plaintiff)
4808 Brown Way
Pittsburgh PA, 15224

I certify that on February 16, 2024, a true and correct copy of this document was also served upon the Plaintiff via e-mail at the below email address:

Parkerlegal412@gmail.com

/s/ Hillary M. Weaver
Hillary M. Weaver, Esquire