IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM PARKER, | ) | |
| | ) | |
| Plaintiff, | ) | Hon. J. Nicholas Ranjan |
| | ) | |
| v. | ) | 2:23-cv-2102-NR |
| | ) | |
| EDWARD GAINEY, et al., | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

**BRIEF IN SUPPORT OF DEFENDANT EDWARD GAINEY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**I.     INTRODUCTION**

Plaintiff William Parker's ("Mr. Parker") claims against Mayor Edward Gainey ("Mayor Gainey") should be dismissed for failure to state claims upon which relief can be granted. Mr. Parker named Mayor Gainey as a defendant in his Fourth Amendment malicious prosecution claim, First Amendment retaliation claim, and Fourteenth Amendment failure to train, discipline, and supervise claim. Mr. Parker's Complaint also includes a duplicative Fourth Amendment and First Amendment claim against Mayor Gainey. Mr. Parker fails to plead any facts showing Mayor Gainey's personal involvement in any alleged constitutional violations. Instead, Mr. Parker merely claims that Mayor Gainey was at the same event where his altercation with other defendants occurred and "allowed" Mr. Parker to be arrested. Even taking these allegations as true, they are insufficient to state claims against Mayor Gainey.

First, Mr. Parker fails to plead sufficient facts to support his malicious prosecution and First Amendment retaliation claims against Mayor Gainey. When legal conclusions and unsupported allegations are disregarded, the only facts in support of Mr. Parker's claims show that Mayor Gainey was present at the same event where other defendants allegedly used force on Mr. Parker and arrested Mr. Parker. This singular fact is insufficient to state a claim for malicious

1

prosecution and First Amendment retaliation against Mayor Gainey. Alternatively, even if Mr. Parker has pleaded facts in his complaint sufficient to state these claims against Mayor Gainey, Mayor Gainey is nonetheless entitled to qualified immunity from these claims.

Second, Mr. Parker likewise fails to plead facts sufficient to state a Fourteenth Amendment claim against Mayor Gainey. Mr. Parker cannot state a claim under the Fourteenth Amendment when he may properly bring claims related to his arrest and prosecution under the Fourth Amendment and First Amendment. The Fourteenth Amendment substantive due process clause should not be treated as a catch-all claim based on dissatisfaction with an individual who happens to be a municipal employee. *See Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 848 (1998). Moreover, to the extent his Fourteenth Amendment claim attempts to state a claim for municipality liability against Mayor Gainey, this claim fails as a matter of law. *Monell* claims may only be brought against municipalities, not individuals.

Third and finally, Mr. Parker states duplicative First and Fourth Amendment claims against Mayor Gainey. His duplicative Fourth Amendment claims is titled to include claims of excessive force and false arrest against Mayor Gainey. Mr. Parker does not include any facts showing that Mayor Gainey used any force whatsoever on Mr. Parker or participated in his arrest. His duplicative Fourth Amendment claim therefore fails as a matter of law, and Mayor Gainey requests that this Court exercise its discretion to dismiss any remaining duplicative claims.

## II.   FACTUAL BACKGROUND[1]

On June 17, 2023, Mr. Parker attended the City of Pittsburgh's Juneteenth parade in the Hill District to protest some of Mayor Ed Gainey's policies. ECF No. 1 ¶¶ 7-8. Mayor Gainey, his

---

[1] Mayor Gainey summarizes and accepts as true facts alleged in Mr. Parker's Complaint for purposes of this Motion to Dismiss only.

bodyguards, and other local officials attended the parade. *Id.* ¶¶ 10, 12, 13. Mr. Parker claims that, while protesting, one of Mayor Gainey's bodyguards, later identified as Detective Kerry Ford, "aggressively pushed" Mr. Parker. *Id.* ¶ 10. As Mr. Parker "regained his balance," he continued his protest by walking down the street, observing Mayor Gainey "from a distance." *Id.* ¶ 11.

From the point of his initial interaction with Detective Ford onward, Mr. Parker makes a number of claims, none of which involve Mayor Gainey. Mr. Parker alleges that he was "run into" and "bumped" by Detective Michael Gay and Allegheny County Councilwoman Bethany Hallam. *Id.* ¶¶ 11-14. Eventually, Pittsburgh Bureau of Police ("PBP") Chief Larry Scirotto ordered Mr. Parker's arrest, and other police officers handcuffed him. *Id.* ¶¶ 14-17. Mr. Parker concluded that he "was being arrested for protesting against [Mayor Gainey]." *Id.* ¶ 17. Detective Ford filed an affidavit of probable cause charging Mr. Parker with criminal offenses, and Mr. Parker was transported to the Allegheny County Jail. *Id.* ¶¶ 21, 27. Mr. Parker was charged with felony assault and four counts of disorderly conduct. *Id.* ¶ 22. Mr. Parker's charges were withdrawn on June 26, 2023. *Id.* ¶ 23.

### III.  STANDARD OF REVIEW

To survive a motion to dismiss, complaints must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plaintiff must allege facts that "'raise a right to relief beyond a speculative level.'" *Robinson v. Family Dollar, Inc.*, 679 F. App'x 126, 131 (3d Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). Though courts must accept all well-pleaded facts as true, this obligation does not extend to legal conclusions that are "couched as . . .

factual allegation[s]." *Twombly*, 550 U.S. at 555. Moreover, plaintiffs "[can]not attempt to use discovery as a fishing expedition to determine the existence of . . . facts necessary to establish a legally adequate [claim]." *White v. Hon Co.*, 520 F. App'x 93, 95 (3d Cir. 2013).

Although courts "must be mindful to construe [*pro se* complaints] liberally in favor of the plaintiff," "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Hoye v. Allegheny Cty. Med. Dep't*, Civil Action No. 2:23-cv-1648, 2023 U.S. Dist. LEXIS 195136, at *3 (W.D. Pa. Sept. 26, 2023); *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Liberal construction "does not require the Court to credit a *pro se* plaintiff's bald assertions or legal conclusions." *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (internal quotations omitted) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Thus, a court should dismiss a *pro se* complaint if the complaint "cannot be construed as supplying facts to support a claim entitling the plaintiff to relief." *Id.* (citing *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981)).

### IV.  ARGUMENT

    A.  <u>Mr. Parker fails to plead any facts showing Mayor Gainey's personal involvement in any alleged constitutional violation.</u>

As a threshold matter, all of Mr. Parker's claims against Mayor Gainey should be dismissed because Mr. Parker has failed to plead facts showing Mayor Gainey was personally involved in any alleged Constitutional violations. Mr. Parker relies only on a respondeat superior theory of liability to state his claims against Mayor Gainey, which is improper. Respondeat superior claims merely allege an employer-employee relationship, "regardless of whether the employer had any part in causing harm." *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (citing *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 692 (1978)). "Government officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of

4

respondeat superior." *Iqbal*, 556 U.S. at 676. Thus, a supervisor's liability for a constitutional harm may only come from direct participation in the violation, or because the supervisor "directed others to violate [the plaintiff's rights], or, as the person in charge, had knowledge of and acquiesced in his subordinate's violations." *Santiago*, 629 F.3d at 129 (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir.2004)).

To state a claim for personal involvement in a supervisory capacity, the plaintiff must allege that the defendant was "involved personally, meaning through personal direction or actual knowledge and acquiescence, in the wrongs alleged." *McKenna v. City of Phila.*, 582 F.3d 447, 460 (3d Cir. 2009). A showing of personal direction or knowledge and acquiescence requires more than an allegation that a supervisor "was in the vicinity of the arrest at some point." *Id.* Rather, it requires a supervisor to proximately cause the constitutional violation and "contemporaneous, personal knowledge" of the violation. *Santiago*, 629 F.3d at 130; *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). The supervisor must have given direction that he "knew or should reasonably have known would cause others to deprive the plaintiff of her constitutional rights" *Santiago*, 629 F.3d at 130 (internal quotations omitted) (quoting *Conner v. Reinhard*, 847 F.2d 384, 397 (7th Cir. 1988)). To the extent Mr. Parker is alleging that Mayor Gainey is liable for alleged constitutional violations because he "allowed" Detectives Ford and Gay to arrest and charge Mr. Parker, this claim fails. *See* ECF No. 1 ¶ 44. Mr. Parker's complaint is devoid of any allegations that Mayor Gainey gave any directions to defendant officers, or that he acquiesced to any alleged violations of Mr. Parker's constitutional rights. Accordingly, Mr. Parker's claims against Mayor Gainey should be dismissed.

### 1. Mr. Parker's malicious prosecution claim should be dismissed because Mayor Gainey did not initiate criminal proceedings against Mr. Parker.

Mr. Parker's malicious prosecution claim against Mayor Gainey should be dismissed because Mr. Parker has failed to plausibly allege that Mayor Gainey had any involvement in initiating criminal proceedings against him. A claim for malicious prosecution, at the outset, requires a plaintiff to plausibly allege that a defendant initiated criminal proceedings against him. *Harvard v. Cesnalis*, 973 F.3d 190, 205 n.7 (3d Cir. 2020). When a plaintiff brings a claim for malicious prosecution against a non-prosecutor, the plaintiff must allege that the defendant "influenced or participated in the decision to institute criminal proceedings" by "conceal[ing] and misrepresent[ing] material facts to the district attorney." *Halsey v. Pfeiffer*, 750 F.3d 273, 297 (3d Cir. 2014).

Courts within this Circuit enforce this "initiation" requirement strictly. Presence at an arrest or tangential involvement in a prosecution do not confer liability. In *Lozano v. New Jersey*, the defendant officer "st[ood] nearby" while other officers investigated the plaintiff for drunk driving. 9 F.4th 239, 242 (3d Cir. 2021). Another officer arrested the plaintiff, but the defendant officer transported him to the police station and helped begin the plaintiff's processing by asking for his name and to turn over loose clothing. *Id.* at 242. Another officer filed the documents formally charging the plaintiff. *Id.* at 243. Because the defendant officer did not initiate the charges against the plaintiff, the court dismissed the plaintiff's claim for malicious prosecution. *Id.* at 247. Similarly, even an arresting or investigating officer cannot be liable for malicious prosecution if the officer played no role in filing charges. *See Sheing v. Fountain*, 729 F. App'x 175, 179 (3d Cir. 2018) (dismissing malicious prosecution claim against officer who investigated claim of home improvement fraud and arrested the plaintiff).

Mr. Parker's Complaint concludes that that Mayor Gainey "filed and/or participated in the filing of criminal charges against the plaintiff." ECF No. 1 ¶ 39. This allegation is merely a recitation of an element of his malicious prosecution claim and should be disregarded. The facts in Mr. Parker's Complaint demonstrate that Mayor Gainey did not file criminal charges against Mr. Parker, and he concedes that Detective Ford filed the affidavit of probable cause. *Id.* ¶ 27. Likewise, Mr. Parker does not plausibly allege that Mayor Gainey "participated" in his prosecution. Mr. Parker does not claim that Mayor Gainey made any statements to Detective Ford, let alone any materially false statements, which is required to adequately state a malicious prosecution claim. Indeed, Mr. Parker fails to allege whether Mayor Gainey even witnessed the altercation between Mr. Parker, Detective Gay, and Councilwoman Hallam. *Id.* ¶¶ 12-14. Specifically, Mr. Parker notes that he was protesting against Mayor Gainey "from a distance" when one of Mayor Gainey's bodyguards, Detective Gay, allegedly began to follow him closely. *Id.* ¶¶ 10-11. Even taking as true Mr. Parker's conclusory claim that the charges filed against him lacked probable cause, Mr. Parker fails to plead facts showing that Mayor Gainey had any knowledge whatsoever about the altercation to correct, question, or direct the judgment of the police officers involved in Mr. Parker's arrest and/or prosecution.

At the very most, Mr. Parker alleges that Mayor Gainey was in the vicinity when he was arrested and/or that he is the supervisor of the officer who authored the affidavit of probable cause in support of Mr. Parker's criminal charges. Mr. Parker's allegations with respect to Mayor Gainey fail to state a claim for malicious prosecution and fail to satisfy the threshold personal involvement requirement of section 1983 claims. Rather, Mr. Parker merely states a claim for respondeat superior liability against Mayor Gainey based on his alleged inaction, rather than on the direction

of subordinates. Thus, this Court should dismiss the malicious prosecution claim brought against Mayor Gainey.

### 2. Mr. Parker's First Amendment retaliation claim should be dismissed because Mayor Gainey did not participate in any of the retaliatory acts alleged.

Mr. Parker alleges that City and County officials retaliated against him for his protest by using force on him, arresting him, and prosecuting him. ECF No. 1 ¶ 42. Specifically, he alleges that Mayor Gainey retaliated against him by "allowing his bodyguards to unlawfully arrest and falsely charge the plaintiff with crimes that [Mayor Gainey] knew or should have known the plaintiff did not commit." *Id.* ¶ 44. Mr. Parker's retaliation claims against Mayor Gainey fail. First Amendment retaliation requires a plaintiff to allege that (1) he was engaged in a protected activity; (2) that he suffered an adverse action by government officials; and (3) that there was a causal relationship between the protected activity and adverse action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). As with other section 1983 claims, "a claim for First Amendment retaliation requires personal involvement in the alleged retaliatory conduct so that there is a causal connection." *Smith v. Dep't of Gen. Stores*, 181 F. App'x 327, 331 (3d Cir. 2006) (citing *Brennan v. Norton*, 350 F.3d 399, 414, 419 (3d Cir. 2003)). The causation element of a retaliation claim can be established through by temporal proximity or "a pattern of antagonism," but as a preliminary matter, the defendant must have had knowledge of the protected activity. *See Kachmar v. Sungard Data Sys.*, 109 F.3d 173, 177 (3d Cir. 1997); *Sides v. Fiscus Hearing Exam'r*, No. 1:21-cv-249, 2022 U.S. Dist. LEXIS 218822, at *12-*13 (W.D. Pa. Dec. 1, 2022) ("Similarly, [plaintiff] does not allege that [defendants] were aware of his lawsuit . . . thus the requisite elements of a retaliation claim have not been pleaded."); *Houser v. Widenor*, 2019 U.S. Dist. LEXIS 49739, at *9 (W.D.

Pa. Mar. 26, 2019) ("A defendant may not be held liable for retaliation absent evidence sufficient to show that the defendant knew of the plaintiff's protected activity.").

Additionally, as discussed above, section 1983 claims require "personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). In the context of a First Amendment retaliation claim, this amounts to "personal involvement in the alleged retaliatory acts." *McIntyre v. Phillips*, Civil Action No. 23-3508, 2023 U.S. Dist. LEXIS 208207, at *28 (E.D. Pa. Nov. 21, 2023). Here, Mr. Parker specifically alleges that the retaliatory actions were police officers' use of force, his arrest, and his prosecution. ECF No. 1 ¶¶ 42, 44.

Even assuming that Mr. Parker was engaged in protected speech near the time of his arrest, he fails to plausibly allege that Mayor Gainey was aware of this alleged protected speech. Rather, Mr. Parker merely states that he protested at an event that Mayor Gainey also attended, and at one point observed Mayor Gainey "from a distance." ECF No. 1 ¶¶ 7, 10. Instead, Mr. Parker alleges that Mayor Gainey's bodyguards were aware that Mr. Parker was conducting a protest. *Id.* ¶¶ 10-11. Absent any non-conclusory claims pertaining to Mayor Gainey's knowledge of Mr. Parker's protest, Mr. Parker fails to satisfy the causation element necessary to establish a First Amendment retaliation claim and merely attempts to hold Mayor Gainey liable for the allegedly unconstitutional actions of his employees under a theory of respondeat superior. Mr. Parker's insufficient facts and legal conclusions cannot form the basis for a First Amendment retaliation claim. *See Santiago*, 629 F.3d at 130.

Additionally, even if Mayor Gainey was aware of Mr. Parker's protest, Mayor Gainey was not personally involved in the alleged retaliatory action against Mr. Parker. For example, Mayor Gainey did not use force on Mr. Parker, arrest Mr. Parker, or initiate criminal proceedings against Mr. Parker. *See* ECF No. 1 ¶¶ 14-17, 27. Mayor Gainey can only be held liable if he directed

officers to engage in the alleged constitutional violations described or knew they were engaged in the violations, and acquiesced to them. *See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Mr. Parker's Complaint is entirely devoid of these allegations. Mr. Parker does not allege that Mayor Gainey directed officers to arrest him, only that Mayor Gainey "allow[ed]" the arrest. ECF No. 1 ¶ 44. "Although a supervisor cannot encourage constitutional violations, a supervisor 'has no affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights' . . . So alleging superiors 'allowed' the unconstitutional practices of their subordinates is not sufficient to impose supervisor liability." *Batchelor v. Spagnoletti*, Civil Action No. 24-1258, 2024 U.S. Dist. LEXIS 69733, at *24 (E.D. Pa. Apr. 17, 2024) (quoting *Mack v. Clark*, No. 21-0004, 2022 U.S. Dist. LEXIS 121813, at *5 (W.D. Pa. July 11, 2022)).

For these reasons, Mr. Parker's claim for retaliation fails to plausibly allege Mayor Gainey's knowledge of his protected activity or his personal involvement in the alleged retaliatory acts. Thus, this Court should dismiss his retaliation claim for failure to state a claim.

    B.    <u>Even if Mr. Parker has pleaded sufficient facts showing Mayor Gainey's personal involvement in alleged constitutional violations, Mayor Gainey, at a minimum, is entitled to qualified immunity.</u>

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law" and "gives ample room for mistaken judgments." *Hunter*, 502 U.S. at 229 (internal quotations omitted) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "This accommodation for reasonable error exists because 'officials should not err always on the

side of caution' because they fear being sued." *Id*. (quoting *Davis v. Scherer*, 468 U.S. 183, 196 (1984)). Qualified immunity "is not a mere defense from liability; it is an entitlement not to stand trial or face the other burdens of litigation." *Curley v. Klem*, 298 F.3d 271, 277 (3d Cir. 2002) (internal quotations omitted) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "If a case is erroneously permitted to go to trial, then qualified immunity is effectively lost." *Id*.

To determine whether qualified immunity applies, courts must determine whether: (1) there was a violation of a constitutional right; and (2) the right is clearly established in light of the specific context of the case. *Marcavage v. National Park Service et al.*, 2012 WL 310850, *2 (3d Cir. 2012). Generally, lower courts have discretion in deciding which part of the test to analyze first. *Camreta v. Greene*, 563 U.S. 692, 707 (2011). However, the Supreme Court has cautioned lower courts to "think hard, and then think hard again, before turning small cases into large ones" by "ruling on the (perhaps difficult) constitutional claim the plaintiff has raised." *Id*. at 705, 707. Thus, Mayor Gainey first asks this Court to first determine whether the Constitutional rights at issue are "clearly established" before reaching the issue of whether a Constitutional violation occurred. *See Brown v. Harris*, No. 20-5354, 2023 U.S. Dist. LEXIS 35191, at *9-10 (E.D. Pa. Mar. 2, 2023).

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (internal quotations omitted) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The right at issue should not be defined "at a high level of generality." *Id*. Specificity is necessary because a court must determine "whether the violative nature of *particular* conduct is clearly established." *Mullenix*, 577 U.S. at 12 (internal quotations omitted) (emphasis in original).

11

Given the required level of specificity, the constitutional right at issue as to Mayor Gainey's alleged conduct is whether the Constitution requires a non-law enforcement political official to intervene to prevent the arrest or prosecution of an individual alleged to have committed a crime in his vicinity. To determine whether this right was clearly established at the relevant time, a court must "look first for applicable Supreme Court precedent." *Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist.*, 877 F.3d 136, 142 (3d Cir. 2017). If there is no applicable Supreme Court precedent, a plaintiff must point to a "robust consensus of cases of persuasive authority in the court of appeals that could clearly establish a right for purposes of qualified immunity." *Id.*

Here, there are no Supreme Court cases, Third Circuit cases, or cases from other circuit courts establishing constitutional rights with regard to Mayor Gainey's alleged conduct. To the contrary, courts within this Circuit have noted that the duty to intervene has only been found to apply to instances of excessive force, *see Smith v. Mensinger*, 293 F.3d 641, 656 (3d Cir. 2002), and only when there is a "'realistic and reasonable opportunity to intervene.'" *McGuire v. Borough of Wilkinsburg*, Civil Action No. 13-1330, 2015 U.S. Dist. LEXIS 47030, at *9 (W.D. Pa. Mar. 13, 2015) (quoting *Smith*, 293 F.3d at 651). This duty has not been applied to allegedly unconstitutional arrests or prosecutions. *Lozano*, 9 F.4th at 273 n.4 (granting qualified immunity as to the plaintiff's failure to intervene in false arrest claim); *see, e.g.*, *Ogrod v. City of Philadelphia*, 598 F. Supp. 3d 253, 273 (E.D. Pa. 2022) ("We are aware of no legal authority on which we could base a conclusion that the individual Defendants had a clearly established duty to intervene to prevent his false arrest, malicious prosecution, false imprisonment and deprivation of liberty."); *Maldonado v. City of Philadelphia*, No. 22-3474, 2023 U.S. Dist. LEXIS 125785, at *24 (E.D. Pa. July 21, 2023) (finding officer's duty to intervene in an ongoing prosecution is not clearly established and that to hold otherwise would "impermissibly broaden[] the scope of a

clearly established right). *Cf. Goldwire v. City of Philadelphia*, 130 F. Supp. 3d 936, 940, 943 (E.D. Pa. 2015) (denying qualified immunity to officers who failed to intervene in plaintiff's arrest for carrying a firearm without a license, even though the officers were aware the plaintiff had a license). Likewise, even considering the limited circumstances where a duty to intervene has been clearly established, neither the Supreme Court or the Third Circuit have applied this duty to non-law enforcement political officials who are merely in the general vicinity of the allegedly unconstitutional conduct. *See Weimer v. County of Fayette*, 972 F.3d 177, 191 (3d Cir. 2020) (granting qualified immunity to prosecutor who failed to intervene in an allegedly unconstitutional investigation by law enforcement).

Because Mr. Parker cannot point to any precedent showing that Mayor Gainey's conduct violated his clearly established constitutional rights, this Court should grant Mayor Gainey qualified immunity as to all claims.

C. Mr. Parker has failed to state a Fourteenth Amendment claim against Mayor Gainey.

Mr. Parker's Complaint includes Mayor Gainey as a named defendant in his Fourteenth Amendment failure to train, discipline, and/or supervise claim. To the extent Mr. Parker seeks to bring his excessive force, malicious prosecution, or retaliation claim under the Fourteenth Amendment, this claim fails as a matter of law. A substantive due process claim is only appropriate where a constitutional amendment does not provide an "explicit textual source of protection." *Albright v. Oliver*, 510 U.S. 266, 273 (1994). Furthermore, a substantive due process claim cannot be used as a "catch-all" for any alleged constitutional violation. *Lewis*, 523 U.S. 848 ("[W]e have made it clear that the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm."). Because Mr. Parker has brought claims related to his arrest and prosecution under the Fourth Amendment, which is the

explicit textual source of protection for the types of constitutional injuries Mr. Parker describes, he cannot also state these claims under the Fourteenth Amendment.

Mr. Parker's inclusion of language related to failure to train, discipline, and/or supervise suggests Mr. Parker is bringing a *Monell* claim against Mayor Gainey. *See Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999) (a municipality may be liable when it has a policy that "concerns a failure to train or supervise municipal employees" and the failure "amounts to deliberate indifference to the rights of persons with whom the employees will come into contact"). Individuals cannot be liable under a *Monell* theory of liability. *Lepre v. Lukus*, 602 F. App'x 864, 869 n.4 (3d Cir. 2015); *see Moore v. Solanco Sch. Dist.*, 471 F. Supp. 3d 640, 670 (E.D. Pa. 2020) (granting motion to dismiss Monell claims against individual defendants because "*Monell* liability only applies to municipalities, not individuals."). Accordingly, Mr. Parker's *Monell* claims against Mayor Gainey should be dismissed for failure to state a claim.

> D. <u>Mr. Parker's duplicative First and Fourth Amendment claims should be dismissed, and any additional claims brought under his second Fourth Amendment claim should also be dismissed.</u>

Mr. Parker also states a duplicative Fourth Amendment and First Amendment claim against Mayor Gainey. To the extent Mr. Parker is alleging malicious prosecution and First Amendment retaliation, these additional claims do not contain any additional factual basis to suggest they stem from a separate arrest or prosecution. District Courts enjoy "inherent authority to control [their] docket[s] and avoid duplicative claims[.]" *Corlew v. Honesdale Borough*, No. 3:22-CV-01990, 2024 WL 1051980, at *3 (M.D. Pa. Mar. 11, 2024). Accordingly, Mayor Gainey requests that this Court dismiss the duplicative claims against him.

The title of Mr. Parker's second Fourth Amendment claim also suggests he is bringing a false arrest and excessive force claim against Mayor Gainey. Mr. Parker's complaint does not

contain any facts showing that Mayor Gainey used force on Mr. Parker or was involved in his arrest. *See* ECF No. 1 ¶¶ 10-16. As discussed, Mr. Parker merely alleges that Mayor Gainey "allowed" his arrest, which is insufficient to state a claim against him. *See id.* ¶ 44. Thus, this Court should dismiss any excessive force and/or false arrest claims against Mayor Gainey.

## V. CONCLUSION

For the foregoing reasons, Mayor Gainey respectfully requests that this Court dismiss all claims against him in Mr. Parker's Complaint.

Respectfully submitted,

KRYSIA KUBIAK
City Solicitor

*/s/ Hillary M. Weaver*
Hillary M. Weaver, Esquire
Assistant City Solicitor
PA I.D. No. 322545
City of Pittsburgh Department of Law
313 City-County Building
414 Grant Street
Pittsburgh, PA  15219
(412) 255-2014
hillary.weaver@pittsburghpa.gov
*Counsel for Mayor Edward Gainey*

## **CERTIFICATE OF SERVICE**

  I, Hillary M. Weaver, hereby certify that I caused a copy of Edward Gainey's Motion to Dismiss and Brief in Support thereof to be served upon the following via electronic mail:

Mr. William Parker
Parkerlegal412@gmail.com
*Pro Se Plaintiff*

Date: May 10, 2024           */s/ Hillary M. Weaver*
                   Hillary M. Weaver, Esquire
                   Assistant City Solicitor
                   *Counsel for Mayor Edward Gainey*