**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WILLIAM PARKER, | ) | |
| | ) | |
| Plaintiff, | ) | Hon. J. Nicholas Ranjan |
| | ) | |
| v. | ) | 2:23-cv-2102-NR |
| | ) | |
| EDWARD GAINEY, et al., | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

**BRIEF IN SUPPORT OF DEFENDANT LARRY SCIROTTO'S PARTIAL MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**I.      INTRODUCTION**

Plaintiff William Parker's ("Mr. Parker") malicious prosecution claim and Fourteenth Amendment claim against Defendant Chief Larry Scirotto ("Chief Scirotto") should be dismissed for failure to state claims upon which relief can be granted. Any duplicative claims against Chief Scirotto should also be dismissed.

First, Mr. Parker fails to plead sufficient facts to support his malicious prosecution claim against Chief Scirotto. Mr. Parker alleges that Chief Scirotto participated in his arrest, but does not allege that Chief Scirotto filed charges against him, ordered others to file charges, or had any involvement whatsoever in initiating criminal proceedings against Mr. Parker. This fails to meet the first element of a claim for malicious prosecution, and thus the claim should be dismissed. Alternatively, even if Mr. Parker has pleaded facts in his Complaint sufficient to support a claim for malicious prosecution against Chief Scirotto, Chief Scirotto is entitled to qualified immunity.

Second, Mr. Parker likewise fails to plead facts sufficient to state a Fourteenth Amendment claim against Chief Scirotto. Mr. Parker cannot state a claim under the Fourteenth Amendment when he may properly bring claims related to his arrest and prosecution under the Fourth

Amendment and First Amendment. Moreover, to the extent his Fourteenth Amendment claim attempts to state a claim for municipality liability against Chief Scirotto, this claim fails as a matter of law. *Monell* claims may only be brought against municipalities, not individuals.

Third and finally, Mr. Parker includes duplicative First and Fourth Amendment claims against Chief Scirotto. Chief Scirotto requests that this Court exercise its discretion to dismiss these redundant claims.

## II. FACTUAL BACKGROUND

On June 17, 2023, Mr. Parker attended the City of Pittsburgh's Juneteenth parade in the Hill District to protest some of Mayor Ed Gainey's policies. ECF No. 1 ¶¶ 7-8. Mayor Gainey, his bodyguards, and other local officials attended the parade. *Id.* ¶¶ 10, 12, 13. Mr. Parker alleges that, during his protest, he was "bumped" by Detective Kerry Ford, "follow[ed]" by Detective Michael Gay, and "bumped several times with a great deal of force" by Allegheny County Councilwoman Bethany Hallam. *Id.* ¶¶ 10-12. Mr. Parker allegedly asked Councilwoman Hallam "to stop violently bumping into [his] right shoulder." *Id.* ¶ 12.

In response to this request, Mr. Parker claims that Detective Gay "got into [his] face," and then said, "I'm bumping you now, what are you going to do about it?" *Id.* ¶ 13. This, according to Mr. Parker, caused Pittsburgh Bureau of Police ("PBP") Chief Scirotto, who observed the interaction, to order police officers to "take [Mr. Parker] down to the ground now, arrest him." *Id.* ¶ 14. Detective Ford and Detective Gay took Mr. Parker to the ground, and they, along with Chief Scirotto, handcuffed Mr. Parker. *Id.* ¶ 15. Chief Scirotto escorted Mr. Parker across the street, and allegedly told Mr. Parker, "The show is over now bitch." *Id.* ¶ 17. Detective Ford, who Mr. Parker avers did not witness the altercation, filed the affidavit of probable cause in support of Mr. Parker's criminal charges. *Id.* ¶ 27. Mr. Parker contends that the affidavit contained false allegations, but

does not specify who provided this "false" information. *Id.* ¶ 28. Mr. Parker was charged with assault and four counts of disorderly conduct. *Id.* ¶ 22. Mr. Parker's criminal charges were withdrawn on June 26, 2023. *Id.* ¶ 23. Mr. Parker claims he sustained physical injuries, emotional harm, and damage to his reputation as a result of this incident. *Id.* ¶ 31.

### III. STANDARD OF REVIEW

To survive a motion to dismiss, complaints must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plaintiff must allege facts sufficient to "'raise a right to relief beyond a speculative level.'" *Robinson v. Family Dollar, Inc.*, 679 F. App'x 126, 131 (3d Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). Though courts must accept all well-pleaded facts as true, this obligation does not extend to legal conclusions that are "couched as . . . factual allegation[s]." *Twombly*, 550 U.S. at 555. Moreover, plaintiffs "[can]not attempt to use discovery as a fishing expedition to determine the existence of . . . facts necessary to establish a legally adequate [claim]." *White v. Hon Co.*, 520 F. App'x 93, 95 (3d Cir. 2013).

Although courts "must be mindful to construe [*pro se* complaints] liberally in favor of the plaintiff," "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Hoye v. Allegheny Cty. Med. Dep't*, Civil Action No. 2:23-cv-1648, 2023 U.S. Dist. LEXIS 195136, at *3 (W.D. Pa. Sept. 26, 2023); *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Liberal construction "does not require the Court to credit a *pro se* plaintiff's bald assertions or legal conclusions." *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (internal quotations omitted) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.

1997)). Thus, a court should dismiss a *pro se* complaint if the complaint "cannot be construed as supplying facts to support a claim entitling the plaintiff to relief." *Id.* (citing *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981)).

## IV.   ARGUMENT

### A.   Mr. Parker fails to state a claim for malicious prosecution against Chief Scirotto.

As a threshold matter, Section 1983 liability only arises when a person, acting under color of state law, "subjects, or causes to be subjected another person to a civil rights violation." *McIntosh v. Wetzel*, Civ. A. 20-1957, 2022 U.S. Dist. LEXIS 143234, at *28 (W.D. Pa. Aug. 11, 2022). Thus, it requires "personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). Government officials, including supervisors, are "only liable for [their] own misconduct." *Iqbal*, 556 U.S. at 677. For this reason, a plaintiff must allege more than "'general knowledge plus a mere failure to act.'" *Prochaska v. Fediaczko*, 473 F. Supp. 704, 708 (W.D. Pa. 1979) (quoting *Fialkowski v. Shapp*, 405 F. Supp. 946, 952 (1976)). Rather, the plaintiff must allege that the defendant was personally involved in that specific violation through the defendant's own individual actions. *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018).

For supervisors, the Third Circuit has recognized that, though the defendant must still have personal involvement in the constitutional violation, this personal involvement may be established "through personal direction or actual knowledge and acquiescence, in the wrongs alleged." *McKenna v. City of Philadelphia*, 582 F.3d 447, 460 (3d Cir. 2009). A showing of personal direction or knowledge and acquiescence requires more than an allegation that a supervisor "was in the vicinity of the arrest at some point." *Id.* Rather, it requires a supervisor to proximately cause the constitutional violation and "contemporaneous, personal knowledge" of the violation. *Santiago*

*v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010); *Evancho*, 423 F.3d at 353. The supervisor must have given direction that he "'knew or should reasonably have known would cause others to deprive the plaintiff of her constitutional rights.'" *Id.* (quoting *Conner v. Reinhard*, 847 F.2d 384, 397 (7th Cir. 1988)). Additionally, a plaintiff must plead knowledge and acquiescence "with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). As with claims against non-supervisors, allegations "devoid of particularity and 'factual enhancement' . . . do not permit [the inference] that any of these defendants personally participated in the initiation of charges." *Scheing v. Fountain*, 729 F. App'x 175, 179 (3d Cir. 2018).

To state a claim for malicious prosecution, a plaintiff must plead facts showing that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Andrews v. Scuilli*, 853 F.3d 690, 697 (3d Cir. 2017). Unlike a claim for false arrest, damages arise for malicious prosecution when a person is seized pursuant to a legal process, while damages arise for false arrest only from the "time of detention until the issuance of process or arraignment, and not more." *Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir. 1998); *Heck v. Humphrey*, 512 U.S. 477, 484 (1994). Consequently, each tort implicates different liability-imposing acts: "A suit for false arrest . . . is the proper action where the aggrieved party is arrested without legal authority . . . In the case of malicious prosecution, the valid process justifies the restraint or imprisonment, and the gist of the cause of action is malice or evil intent." *Simmons v. Poltrone*, No. 96-8659, 1997 U.S. Dist. LEXIS 20512, at *22-*23 (E.D. Pa. Dec. 17, 1997) (quoting The American Law of Torts, § 27:2, at 943-45).

Courts within this Circuit have distinguished between presence at an arrest and the initiation of criminal charges, and declined to find that peripheral involvement in a prosecution constitutes "initiating" criminal charges. In *Lozano v. New Jersey*, the defendant officer "st[ood] nearby" while other officers investigated the plaintiff for drunk driving. 9 F.4th 239, 242 (3d Cir. 2021). Another officer arrested the plaintiff, but the defendant officer transported him to the police station and helped begin the plaintiff's processing by asking for his name and to turn over loose clothing. *Id.* at 242. Additionally, another officer filed the documents formally charging the plaintiff. *Id.* at 243. Because the defendant officer did not initiate the charges against the plaintiff, the court dismissed the plaintiff's claim for malicious prosecution. *Id.* at 247.

The court in *Scheing v. Fountain*, 729 F. App'x 175, 179 (3d Cir. 2018), went further, finding that personal involvement in the arrest and investigation did not eliminate the requirement for personal involvement in the prosecution by initiating charges. In that case, the defendant officer investigated the plaintiff, sought an arrest warrant, and executed the arrest warrant, which allegedly included a material omission. *Id.* The court explained that an investigation and an arrest are "very different from the decision to bring charges or seek indictment." *Id.* "Because the reasonableness of [the defendant's] arrest of [the plaintiff] is a wholly independent inquiry from the propriety of the separate decision to pursue criminal charges against him, [the plaintiff's] failure to allege [the defendant's] involvement in the latter process is fatal to his claim." *Id.*; *see also Mason v. Mahon*, No. 05-cv-1639, 2006 U.S. Dist. LEXIS 12798, at *21 (E.D. Pa. Mar. 23, 2006) (dismissing malicious prosecution claim at summary judgment where the defendant officer was alleged to have influenced criminal investigation but did not file criminal charges or provide any information included in the affidavit of probable cause).

Mr. Parker alleges that Detective Ford filed the affidavit of probable cause against him, and that "the charges filed against the plaintiff were based on false accusations, as the individually-named defendants did not have reason to believe and/or probable cause to believe that such criminal offense had been committed by the plaintiff." ECF No. 1 ¶¶ 26-27. Mr. Parker's claim as to the lack of probable cause is merely a legal conclusion which is not entitled to a presumption of truth. *See James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012). Furthermore, Mr. Parker's Complaint is entirely devoid of allegations linking Chief Scirotto to the allegedly "false" claims in the affidavit. ECF No. 1 ¶ 28. Mr. Parker does not allege that Chief Scirotto participated in drafting the affidavit of probable cause, conferred with Detective Ford about the contents of the affidavit, or otherwise participated in initiating criminal proceedings against him. In fact, he does not allege that Chief Scirotto was involved in his prosecution whatsoever after he escorted Mr. Parker to the other side of the road. *Id.* ¶¶ 26-27.

Similarly, Mr. Parker fails to allege sufficient facts that would implicate Chief Scirotto's liability as a supervisor. Again, Chief Scirotto's involvement is limited to an order to arrest Mr. Parker. However, as discussed *supra*, false arrest and malicious prosecution claims are "wholly independent inquir[ies]." *Scheing*, 729 F. App'x at 179. Mr. Parker does not allege that Chief Scirotto ordered Detective Ford to file the affidavit of probable cause or ordered other police officers at the scene to materially misrepresent the altercation in the affidavit. Likewise, Mr. Parker does not allege that Chief Scirotto knew the charges included in the affidavit of probable cause, or that he knew the charges lacked probable cause. Accordingly, because Mr. Parker fails to allege that Chief Scirotto had any personal involvement in the prosecution brought against him, this Court should dismiss his malicious prosecution claim for failure to state a claim.

> B. Even if Mr. Parker has pleaded sufficient facts showing Chief Scirotto's personal involvement, he is entitled to qualified immunity as to the malicious prosecution claim.

Qualified immunity "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). The doctrine "protects all but the plainly incompetent or those who knowingly violate the law," and "gives ample room for mistaken judgments." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). As a dispositive defense, courts should rule on the doctrine's availability "early in the proceedings so that the costs and expenses of trial are avoided." *Saucier v. Katz*, 533 U.S. 194, 200 (2001); *see also Curley v. Klem*, 298 F.3d 271, 277 (3d Cir. 2002) ("[Qualified immunity] is an entitlement not to stand trial or face the other burdens of litigation."). As a question law, the issue is properly addressed by this Court. *See Sharrar v. Felsing*, 128 F.3d 810, 827-28 (3d Cir. 1997).

Qualified immunity involves a two-part analysis. *Marcavage v. National Park Service et al.*, 666 F.3d 856, 858 (3d Cir. 2012). First, the court must consider whether "the facts alleged, viewed in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right." *Curley*, 298 F.3d at 277. Generally, lower courts have discretion in deciding which part of the test to analyze first. *Camreta v. Greene*, 563 U.S. 692, 707 (2011). The Supreme Court has cautioned lower courts to "think hard, and then think hard again, before turning small cases into large ones" by "ruling on the (perhaps difficult) constitutional claim the plaintiff has raised." *Id.* at 705, 707. Thus, Chief Scirotto first asks this Court to first determine whether the constitutional rights at issue are "clearly established" before reaching the issue of whether a constitutional violation occurred. *See Brown v. Harris*, No. 20-5354, 2023 U.S. Dist. LEXIS 35191, at *9-10 (E.D. Pa. Mar. 2, 2023).

An official loses the protection of qualified immunity only when "[t]he contours of [a] right [are] sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Rather than defining the right generally, courts examine a right specifically to determine "whether the violative nature of *particular* conduct is clearly established." *Mullenix*, 577 U.S. at 12 (internal quotations omitted) (emphasis in original). To determine whether a right was clearly established at the relevant time, a court must "look first for applicable Supreme Court precedent." *Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist.*, 877 F.3d 136, 142 (3d Cir. 2017). If there is no applicable Supreme Court precedent, a plaintiff must point to a "robust consensus of cases of persuasive authority in the court of appeals that could clearly establish a right for purposes of qualified immunity." *Id.*

Here, there are no Supreme Court cases, Third Circuit cases, or cases from other circuit courts clearly establishing that participating in allegedly unconstitutional arrest violates that arrestee's right to be free from malicious prosecution. Rather, as discussed *supra*, courts recognize false arrest and malicious prosecution as discrete claims. Because Mr. Parker cannot point to any law showing that Chief Scirotto's conduct in allegedly ordering the arrest of Mr. Parker violated a clearly established right to be free from malicious prosecution, Chief Scirotto is entitled to qualified immunity.

   C. <u>Mr. Parker has failed to state a Fourteenth Amendment claim against Chief Scirotto.</u>

Mr. Parker's Complaint includes Chief Scirotto as a named defendant in his Fourteenth Amendment failure to train, discipline, and/or supervise claim. To the extent Mr. Parker seeks to bring his excessive force, malicious prosecution, or retaliation claim under the Fourteenth Amendment, this claim fails as a matter of law. A substantive due process claim is only appropriate where a constitutional amendment does not provide an "explicit textual source of protection."

*Albright v. Oliver*, 510 U.S. 266, 273 (1994). Furthermore, a substantive due process claim cannot be used as a "catch-all" for any alleged constitutional violation. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998) ("[W]e have made it clear that the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm."). Because Mr. Parker has brought claims related to his arrest and prosecution under the Fourth Amendment, he cannot properly plead them under the Fourteenth Amendment as well.

Mr. Parker's inclusion of language related to failure to train, discipline, and/or supervise suggests Mr. Parker is bringing a *Monell* claim against Chief Scirotto. *See Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999) (a municipality may be liable when it has a policy that "concerns a failure to train or supervise municipal employees" and the failure "amounts to deliberate indifference to the rights of persons with whom the employees will come into contact"). Individuals cannot be liable under a *Monell* theory of liability. *Lepre v. Lukus*, 602 F. App'x 864, 869 n.4 (3d Cir. 2015); *see Moore v. Solanco Sch. Dist.*, 471 F. Supp. 3d 640, 670 (E.D. Pa. 2020) (granting motion to dismiss *Monell* claims against individual defendants because "*Monell* liability only applies to municipalities, not individuals."). Accordingly, Mr. Parker's *Monell* claims against Chief Scirotto should be dismissed for failure to state a claim.

D.  Mr. Parker's Duplicative First and Fourth Amendment Claims should be dismissed.

Mr. Parker includes duplicative claims for excessive force, false arrest, and malicious prosecution against Chief Scirotto. These additional claims do not contain any additional factual basis to suggest they stem from a separate arrest or prosecution. District Courts enjoy "inherent authority to control [their] docket[s] and avoid duplicative claims[.]" *Corlew v. Honesdale Borough*, No. 3:22-CV-01990, 2024 WL 1051980, at *3 (M.D. Pa. Mar. 11, 2024). Accordingly, Chief Scirotto requests that this Court dismiss the duplicative claims against him.

## V. CONCLUSION

For the foregoing reasons and for the reasons set forth in its Motion, Chief Scirotto respectfully requests that this Court dismiss Mr. Parker's Fourth Amendment malicious prosecution claim, Fourteenth Amendment claim, and any duplicative claims against him.

Respectfully submitted,

KRYSIA KUBIAK
City Solicitor

*/s/ Hillary M. Weaver*
Hillary M. Weaver, Esquire
Assistant City Solicitor
PA I.D. No. 322545
City of Pittsburgh Department of Law
313 City-County Building
414 Grant Street
Pittsburgh, PA 15219
(412) 255-2014
hillary.weaver@pittsburghpa.gov
*Counsel for Chief Larry Scirotto*

**CERTIFICATE OF SERVICE**

I, Hillary M. Weaver, hereby certify that I caused a copy of Larry Scirotto's Partial Motion to Dismiss and Brief in Support thereof to be served upon the following via electronic mail:

Mr. William Parker
Parkerlegal412@gmail.com
*Pro Se Plaintiff*

Date: May 10, 2024                    */s/ Hillary M. Weaver*
                                      Hillary M. Weaver, Esquire
                                      Assistant City Solicitor
                                      *Counsel for Chief Larry Scirotto*