IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM PARKER | : | CIVIL DIVISION |
| | : | |
| Plaintiff, | : | No. 2:23-cv-2102 |
| | : | |
| v. | : | **Type of Pleading:** |
| | : | |
| EDWARD C. GAINEY, et al. | : | **AMENDED COMPLAINT IN CIVIL ACTION** |
| | : | |
| Defendants. | : | |
| | : | **Filed on Behalf of:** |
| | : | |
| | : | Plaintiff |
| | : | |
| | : | **Counsel of Record for This Party:** |
| | : | |
| | : | SMT LEGAL |
| | : | |
| | : | Ryan Nye Gailey, Esq. |
| | : | P.A. ID# 329782 |
| | : | rgailey@smt.legal |
| | : | |
| | : | |
| | : | **Address:** |
| | : | SMT LEGAL |
| | : | 114 Smithfield Street |
| | : | Pittsburgh, PA 15222 |
| | : | |
| | : | **Telephone No.:** |
| | : | (412) 765-3345 |
| | : | |
| | : | **JURY TRIAL DEMANDED** |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


WILLIAM PARKER                              :
                                            :
                Plaintiff,                  :    CIVIL DIVISION
                                            :
        v.                                  :    No. 2:23-cv-2102
                                            :
EDWARD C. GAINEY, et al.                    :
                                            :
                Defendants.                 :
                                            :


## <u>AMENDED COMPLAINT IN CIVIL ACTION</u>

AND NOW comes the Plaintiff, William Parker, by and through his attorneys, SMT LEGAL, Ryan Nye Gailey, Esquire, and files the within Amended Complaint in Civil Action, and in support thereof aver as follows:

### I. PARTIES

1.  The Plaintiff, William Parker (hereinafter "Mr. Parker"), is an adult individual who currently resides in Allegheny County at 4808 Brown Way, Pittsburgh, Pennsylvania 15224.

2.  The Defendant, City of Pittsburgh (hereinafter the "City"), is a Pennsylvania municipal corporate entity and is a proper entity to sue under state and federal law pursuant to 42 U.S.C Section 1983 and 42 U.S.C. Section 1985.

3.  The Defendant, Lawrence Ferrilli, (hereinafter "Defendant Ferrilli"), at all times relevant to the allegations of this Complaint, is employed as a police officer by the Defendant City

of Pittsburgh by the Bureau of Police with an address at City of Pittsburgh, Bureau of Police, 1203 Western Ave, Pittsburgh, PA 15233.

4. Defendant Ferrilli is being sued in both his individual/personal and official capacities. At all times relevant, Defendant Ferrilli was acting in the course of his employment and under color of state law.

5. The Defendant, Kerry Ford (hereinafter "Defendant Ford"), at all times relevant to the allegations of this Complaint, is employed as a police officer by the Defendant City of Pittsburgh by the Bureau of Police with an address at City of Pittsburgh, Bureau of Police, 1203 Western Ave, Pittsburgh, PA 15233.

6. Defendant Ford is being sued in both his individual/personal and official capacities. At all times relevant, Defendant Ford was acting in the course of his employment and under color of state law.

7. The Defendant, Michael Gay (hereinafter "Defendant Gay"), at all times relevant to the allegations of this Complaint, is employed as a police officer by the Defendant City of Pittsburgh by the Bureau of Police with an address at City of Pittsburgh, Bureau of Police, 1203 Western Ave, Pittsburgh, PA 15233.

8. Defendant Gay is being sued in both his individual/personal and official capacities. At all times relevant, Defendant Gay was acting in the course of his employment and under color of state law.

9. The Defendant, Larry Scirotto (hereinafter "Defendant Scirotto"), at all times relevant to the allegations of this Complaint, is employed as the Chief of Police by the Defendant City of Pittsburgh by the Bureau of Police with an address at City of Pittsburgh, Bureau of Police, 1203 Western Ave, Pittsburgh, PA 15233.

10. Defendant Scirotto is being sued in both his individual/personal and official capacities. At all times relevant, Defendant Scirotto was acting in the course of his employment and under color of state law.

11. The Defendant, Edward C. Gainey (hereinafter "Defendant Gainey"), is an adult individual who is the elected Mayor of the City of Pittsburgh with a mailing address of 414 Grant Street, 5th Floor Pittsburgh, PA 15219.

12. Defendant Gainey is being sued in both his individual/personal and official capacities. At all times relevant, Defendant Gainey was acting in the course of his employment/elected status as Mayor of the City of Pittsburgh and under color of state law.

13. The Defendant, Bethany Hallam (hereinafter "Defendant Hallam") is an adult individual who is an at large council representative for Allegheny County with a mailing address of County Council, County Courthouse, 436 Grant Street, Room 119, Pittsburgh, PA 15219-2497.

14. Defendant Hallam is being sued in both her individual/personal and official capacities. At all times relevant, Defendant Hallam was acting in the course of her employment/elected status as Councilperson at large for Allegheny County and under color of state law.

15. At all times relevant to the allegations in this Complaint, all Defendants acted: 1) under color of state law, 2) jointly, in concert, and in conspiracy, and 3) intentionally, deliberately (and/or with deliberate indifference), maliciously, and willfully to violate Plaintiff's federal and state statutory and constitutional rights.

16. At all times relevant to the allegations in this Complaint, governmental or municipal policies/customs of governmental/municipal Defendant were a substantial moving force

behind the violations of Plaintiff's constitutional rights which caused Plaintiff's unjust losses, damages, and injury.

17. Upon information and belief, the City failed to properly and adequately train their subordinate employees; such failure constitutes an established policy or practice.

18. Upon information and belief, the City of Pittsburgh either knew – or should have known – the regular misconduct and abuses perpetrated by certain employees; such failure to take corrective measures and/or discipline their employees constitutes an established policy or practice.

## II.    JURISDICTIONAL STATEMENT

19. This Court has jurisdiction over the subject matter of this case pursuant to, 28 U.S.C. §1343(a)(3) and (4)(civil rights), 28 U.S.C. § 1331, 42 U.S.C. § 1983, 42 U.S.C. § 1985 and has jurisdiction over the state causes of action pursuant to 28 U.S.C. § 1367.

20. Venue is proper pursuant to 28 U.S.C. § 1391(b).

## III.    FACTS

21. On June 17, 2023, a Juneteenth Celebration (hereinafter the "Celebration) was being held in the City of Pittsburgh where a parade (the "Parade") occurred on Centre Avenue.

22. The Mayor of the City of Pittsburgh, Defendant Gainey, was in attendance of the Celebration and Parade along with Defendant Hallam, Defendant Scirotto, Defendant Gay, Defendant Ford, and eventually Officer Ferrilli.

23. Also in attendance of the Celebration was Plaintiff, William Parker.

24. Mr. Parker attempted to address Defendant Gainey regarding eliminating a multi-million dollar Basic Income Pilot program designed to assist low income African-American females in the City of Pittsburgh. Mr. Parker was rebuffed by Defendant Gainey.

25. Additionally, Mr. Parker protested Defendant Gainey over his failure to support and invest in local African-American businesses, African-American technology startup companies and withholding over three million dollars in Covid-19 small business grants. Further, Plaintiff protested the lack of support for the Juneteenth parade where the parade, due to the actions and inactions of Defendant Gainey, faced cancellation.

26. As Defendant Gainey chose to ignore Mr. Parker, Mr. Parker elected to engage in peaceful, non-violent, verbal protest of Defendant Gainey, the duly elected Mayor of the City of Pittsburgh.

27. Defendant Gainey, Defendant Ford, and Defendant Gay, all know Mr. Parker from previous protests.[1] (See exhibit "A").

28. The protest occurred in a traditional public forum which was open to speech and debate, namely, Centre Avenue and Crawford Street in the City's Hill District.

29. In fact, the City's own policy, the Pittsburgh Bureau of Police Roadway Safety Guidelines, July 26, 2018, identifies protest as a "sacrosanct right" and permits protesters to use the roadways even at special events as long as they are not blocking the roadway.

30. Mr. Parker did not block the roadway and attempted to move in conjunction with the parade to spread his message not just to Defendant Gainey but to all listeners who would hear his message.

31. It is a well settled principle that Mayor Gainey, in his position as Mayor of the City of Pittsburgh, is subject to criticism and attack.[2]

---

[1] See Affidavit of Probable Cause, Complaint/Incident Number ASAP-776667/2391997

[2] Thus we consider this case against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials. See Terminiello v. Chicago, 337 U. S. 1, 4; De Jonge v. Oregon, 299 U. S. 353, *271 365.

32. As Mr. Parker engaged in lawfully protected speech, a fundamental right, a male approached him in civilian clothes and physically pushed Mr. Parker. This male was later identified as Defendant Ford.

33. Defendant Ford was working in his capacity as a member of Defendant Gainey's "protective detail."

34. Defendant Ford pushed Mr. Parker in a manner which caused him to lose his balance and almost fall to the ground despite the fact that Mr. Parker was unarmed, not a threat to others, and engaged in a Constitutionally protected activity.

35. Despite being physically shoved by Defendant Ford, Mr. Parker regained his balance and continued his verbal protest of Defendant Gainey.

36. Shortly thereafter, Defendant Gay, another member of Defendant Gainey's "protective detail", began to closely follow Mr. Parker. Defendant Gay intentionally, knowingly, and purposefully ran into Mr. Parker.

37. While Defendant Gay never identified himself and was dressed in plain clothes attire, Mr. Parker recognized Defendant Gay as a City of Pittsburgh police officer.

38. Despite being purposely bumped and shoved, Mr. Parker continued his protest of Defendant Gainey at which time Defendant Hallam began bumping into Mr. Parker's right shoulder with significant force in an attempt to disrupt, dissuade, and stop Mr. Parker's criticism of Defendant Gainey.

39. Mr. Parker verbally cried out for Defendant Hallam to stop violently bumping into Mr. Parker's right shoulder.

40. Following Mr. Parker's request to be allowed to walk and protest unmolested, Defendant Gay approached Mr. Parker from behind and bumped or shoved him with such force that

Mr. Parker almost fell into an orange construction sign which was dividing the lanes of the roadway.

41. Defendant Gay then stepped in front of Mr. Parker, got in Mr. Parker's face, and then prevented Mr. Parker from moving forward with the Parade to continue his protest.

42. Defendant Gay threatened Mr. Parker stating, "I'm bumping you now, what are you going to do about it" and then answering his own rhetorical question stating "nothing" to Mr. Parker. Mr. Parker correctly interpreted these statements as a threat to his person and well-being over his protesting as it was clear Defendant Gay was seeking a physical confrontation to arrest Mr. Parker.

43. Mr. Parker observed another male dressed in dark clothing approach his location and state to Defendant Gay to "take him down to the ground now, arrest him."

44. The male dressed in dark clothing who approached Mr. Parker was later identified by Mr. Parker as City of Pittsburgh, Bureau of Police, Chief Larry Scirotto.

45. Despite Mr. Parker engaging in Constitutionally protected free speech, Defendant Scirotto, acting as Chief law enforcement officer of the City of Pittsburgh Bureau of Police, ordered not only the arrest of Mr. Parker, but directed Defendant Gay to use force against him while doing so. Mr. Parker was compliant, did not resist, was not a flight risk, and was engaged in peaceful protest when the use of force was ordered to be used against him.

46. Following Defendant Scirotto's order, Defendant Ford ran to Mr. Parker's location, kicked his legs out from under him causing pain and injury to Mr. Parker's knees and head, and forcefully handcuffed him.[3]

---

[3] See Affidavit of Probable Cause, Complaint/Incident Number ASAP-776667/2391997

47. Defendants Gay and Ford placed their entire body weight upon Mr. Parker despite his compliance.

48. Defendant Scirotto then forcefully pulled Mr. Parker from the ground, despite not being a certified by the Municipal Police Officer's Education and Training Commission at the time.

49. While walking Mr. Parker across the street, Defendant Scirotto stated to Mr. Parker, "the show is over now bitch." A clear statement of retaliation for Mr. Parker's protest of Defendant Gainey.

50. Mr. Parker was transferred to the custody of Defendant Ferrilli who searched Mr. Parker without his consent.

51. While Mr. Parker was standing in the custody of Defendant Ferrilli, Defendant Ferrilli without reason or justification began twisting Mr. Parker's arm and using the handcuffs to inflict pain to Mr. Parker. Mr. Parker expressed that he was in pain and asked Defendant Ferrilli to stop with no avail.

52. Mr. Parker was eventually transported to and booked into the Allegheny County Jail where he was incarcerated unlawfully for over fifteen hours.

53. Mr. Parker was charged by Defendant Ford with the following charges:

   a. Title 18 Pa.C.S.A. § 2702(a)(3) – Aggravated Assault – Felony 2

   b. Title 18 Pa.C.S.A. § 5503(a)(1) – Disorderly Conduct – Misdemeanor 3

   c. Title 18 Pa.C.S.A. § 5503(a)(2) – Disorderly Conduct – Misdemeanor 3

   d. Title 18 Pa.C.S.A. § 5503(a)(3) – Disorderly Conduct – Misdemeanor 3

   e. Title 18 Pa.C.S.A. § 5503(a)(4) – Disorderly Conduct – Summary

54. The basis alleged by Defendant Ford in the Affidavit of Probable Cause to support Mr. Parker's arrest is that Mr. Parker said the following to Defendant Gainey:

    a.   Shouting Mayor Gainey is a clown;

    b.   Calling Defendant Gainey "Mayor Goofy";

    c.   Telling Defendant Gainey "he wasn't black"; and

    d.   Telling Defendant Gainey to take off his beads.

55. The City of Pittsburgh and its officers and agents, especially including members of the Pittsburgh Bureau of Police are or should be on notice regarding the difference between protected speech and unprotected speech.[45]

## COUNT I
## Violations of the First and Fourteenth Amendment to the United States Constitution and First Amendment Retaliation under 42 U.S.C. 1983
*William Parker vs. Defendant Gainey, Defendant, Scirotto, Defendant Gay, Defendant Ford, Defendant Ferrilli, and Defendant Hallam*

56. Paragraphs one (1) through fifty-five (55), *supra*, are incorporated herein by reference as if the same were fully set forth at length herein.

57. To establish a First Amendment retaliation claim predicated on 42 U.S.C. § 1983, a plaintiff must prove the following elements: (1) constitutionally protected conduct; (2) that the defendant took adverse action sufficient to deter a person of ordinary firmness from exercising his rights; and (3) a causal connection between the two. There is also a

---

[4] The use of profane or vulgar language is protected by the First Amendment unless some exception to the general protection applies. That is, standing alone, profane or vulgar language is not itself obscene and does not amount to fighting words. The same principle applies to the use of a gesture which represents profane or vulgar language, and the communication must be looked at In its entirety and in context to determine whether an exception to the general protection of speech applies. Hackbart v. City of Pittsburgh, No. 2:07CV157, 2009 WL 10728584, at *7 (W.D. Pa. Mar. 23, 2009) citing Brockway v. Shepherd, 942 F. Supp. at 1017.

[5] City of Pittsburgh Legal Update Course dated September 14, 2001, titled "Disorderly Conduct - Obscene Language or Gesture

fourth element required to state a First Amendment retaliation claim premised on an investigation that leads to a decision to prosecute: the absence of probable cause for the prosecution. *Walker v. Clearfield Cty. Dist. Attorney*, 413 Fed.Appx. 481, 483 (3d Cir. 2011).

58. Mr. Parker was engaged in the following constitutionally protected conduct:

    a. Verbally protesting an elected public official in a public setting/traditional public forum using political speech.

    b. Verbally protesting Defendant Gainey for eliminating a multi-million dollar Basic Income Pilot program designed to assist low income African-American females in the City of Pittsburgh;

    c. Verbally protesting Defendant Gainey over his failure to support and invest in local African-American business;

    d. Verbally protesting Defendant Gainey over his failure to support and invest in African-American technology startup companies;

    e. Verbally protesting Defendant Gainey over withholding over three million dollars in Covid-19 small business grants; and

    f. Verbally protesting Defendant Gainey over his lack of support for the Juneteenth parade.

59. Defendant Ford alleges in the Affidavit of Probable Cause, Complaint/Incident Number ASAP-776667/2391997, which he authored that Mr. Parker utilized the following protected speech:

    a. Shouting Mayor Gainey is a clown;

    b. Calling Defendant Gainey "Mayor Goofy";

    c.   Telling Defendant Gainey "he wasn't black"; and

    d.   Telling Defendant Gainey to take off his beads.

60. Defendants took adverse action against Mr. Parker sufficient to deter a person of ordinary firmness from exercising their rights, by:

    a.   Shoving, bumping, striking, or subjecting Mr. Parker to unwanted touching by Defendants Ford, Gay, Ferrilli, Scirotto, and Hallam

    b.   In Defendant Scirotto ordering the use of force against a peaceable Mr. Parker and his arrest.

    c.   In Defendants Gay and Kelly arresting Mr. Parker for exercising protected speech critical of Defendant Gainey.

61. A causal connection exists between Mr. Parker's speech which was critical of Mr. Gainey and the adverse actions taken by the Defendants. Defendants Gay and Ford were aware of Mr. Parker and the Affidavit of Probable Cause, Complaint/Incident Number ASAP-776667/2391997 states that Mr. Parker has previously protested Defendant Gainey.

62. But for Mr. Parker's criticism and protesting Defendant Gainey he would not have been arrested by the Defendants as Defendants found his speech offensive. (See Exhibit "A").

63. Further support is found in Defendant Scirotto's remark to Mr. Parker when he stated, "the show is over now, bitch."

64. There was an absence of probable cause for the prosecution of Mr. Williams because Mr. Parker was engaged in First Amendment protected speech critical of Defendant Gainey. Speech which is protected cannot itself be the basis of arrest nor was Mr. Parker disorderly in any other fashion. Finally, Mr. Parker did not resist, fight, hurt, or injure Defendant Gay.

65. Ultimately, the charges filed at CR3411-23/OTN R 908770-2 were dismissed and/or nolle prossed by the District Attorney's Office of Allegheny County.

**WHEREFORE**, Plaintiff respectfully requests that (after a jury trial consisting of twelve jurors) this Honorable Court enter judgment in favor of Plaintiff against all Defendants jointly and severally for compensatory damages, punitive damages, interest, reasonable attorney's fees pursuant to 42 U.S.C. 1988, costs and expert fees in an amount in excess of $750,000.00 (Seven Hundred Fifty Thousand Dollars and Zero Cents). In the alternative, Plaintiff respectfully requests that this Honorable Court enter such other judgment, order, or decree in Plaintiff's favor that the Court deems just and proper.

## JURY TRIAL DEMANDED

### COUNT II
### False Arrest - Violations of the Fourth and Fourteenth Amendments of the United States Constitution under 42 U.S.C. 1983
*William Parker vs. Defendant, Scirotto, Defendant Gay, Defendant Ford, and Defendant Ferrilli*

66. Paragraphs one (1) through sixty-five (65), *supra*, are incorporated herein by reference as if the same were fully set forth at length herein.

67. "In order to state a cognizable Fourth Amendment claim for false arrest, a plaintiff must allege two elements: (1) that there was an arrest; and (2) that the arrest was made without probable cause." Reid v. Gazo, No. CIV. 12-971 NLH, 2012 WL 3647341, at *3 (D.N.J. Aug. 23, 2012). Elam Fam. v. Pennsylvania, No. 17-CV-1790, 2018 WL 4441532, at *4 (M.D. Pa. Aug. 1, 2018), report and recommendation adopted, No. 1:17-CV-1790, 2018 WL 4404709 (M.D. Pa. Sept. 17, 2018).

68. On June 17, 2023, Mr. Parker was arrested by Defendant Kelly and Defendant Gay at the direction of Defendant Scirotto. (See Exhibit "A").

69. On June 17, 2023, Defendant Kelly filed charges at CR3411-23/OTN R 908770-2 in the Pittsburgh Municipal Court.

70. There was an absence of probable cause for the prosecution of Mr. Williams because Mr. Parker was engaged in First Amendment protected speech critical of Defendant Gainey. Speech which is protected cannot itself be the basis of arrest nor was Mr. Parker disorderly in any other fashion. Finally, Mr. Parker did not resist, fight, hurt, or injure Defendant Gay.

71. Ultimately, the charges filed at CR3411-23/OTN R 908770-2 were dismissed and/or nolle prossed by the District Attorney's Office of Allegheny County.

**WHEREFORE**, Plaintiff respectfully requests that (after a jury trial consisting of twelve jurors) this Honorable Court enter judgment in favor of Plaintiff against all Defendants jointly and severally for compensatory damages, punitive damages, interest, reasonable attorney's fees pursuant to 42 U.S.C. 1988, costs and expert fees in an amount in excess of $750,000.00 (Seven Hundred Fifty Thousand Dollars and Zero Cents). In the alternative, Plaintiff respectfully requests that this Honorable Court enter such other judgment, order, or decree in Plaintiff's favor that the Court deems just and proper.

## JURY TRIAL DEMANDED

## COUNT III
### Malicious Prosecution - Violations of the Fourth and Fourteenth Amendments of the United States Constitution under 42 U.S.C. 1983
*William Parker vs. Defendant Gainey, Defendant, Scirotto, Defendant Gay, Defendant Ford, Defendant Ferrilli, and Defendant Hallam*

72. Paragraphs one (1) through seventy-one (71), *supra*, are incorporated herein by reference as if the same were fully set forth at length herein.

73. "[T]o prove malicious prosecution ... a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003); Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009); Piazza v. Lakkis, 2012 WL 2007112, *7 (M.D. Pa. June 5, 2012); Curry v. Yachera, 835 F.3d 373, 379-80 (3d Cir. 2016). Wiggins v. McAndrew, No. CV 3:17-1410, 2018 WL 3727389, at *7 (M.D. Pa. Aug. 6, 2018)

74. On June 17, 2023, Mr. Parker was arrested by Defendant Kelly and Defendant Gay at the direction of Defendant Scirotto. (See Exhibit "A").

75. On June 17, 2023, Defendant Kelly filed charges at CR3411-23/OTN R 908770-2 in the Pittsburgh Municipal Court.

76. There was an absence of probable cause for the prosecution of Mr. Williams because Mr. Parker was engaged in First Amendment protected speech critical of Defendant Gainey. Speech which is protected cannot itself be the basis of arrest nor was Mr. Parker disorderly in any other fashion. Finally, Mr. Parker did not resist, fight, hurt, or injure Defendant Gay.

77. Ultimately, the charges filed at CR3411-23/OTN R 908770-2 were dismissed and/or nolle prossed by the District Attorney's Office of Allegheny County.

78. But for Mr. Parker's criticism and protesting Defendant Gainey he would not have been arrested by the Defendants as Defendants found his speech offensive. (See Exhibit "A").

79. Further support is found in Defendant Scirotto's remark to Mr. Parker when he stated, "the show is over now, bitch."

80. Defendants Gay, Ford, Scirotto, Ferrilli, Hallam and Gainey all sought to silence Mr. Parker's criticisms and protest of Defendant Gainey through his arrest and physical violence towards Mr. Parker.

81. Defendants Gainey, Hallam, and Gay are purported victims in the criminal complaint filed by Defendant Ford.

82. As a result of his unlawful arrest, Mr. Parker was deprived of his liberty interests and jailed in the Allegheny County Jail for over fifteen hours.

**WHEREFORE**, Plaintiff respectfully requests that (after a jury trial consisting of twelve jurors) this Honorable Court enter judgment in favor of Plaintiff against all Defendants jointly and severally for compensatory damages, punitive damages, interest, reasonable attorney's fees pursuant to 42 U.S.C. 1988, costs and expert fees in an amount in excess of $750,000.00 (Seven Hundred Fifty Thousand Dollars and Zero Cents). In the alternative, Plaintiff respectfully requests that this Honorable Court enter such other judgment, order, or decree in Plaintiff's favor that the Court deems just and proper.

## JURY TRIAL DEMANDED

<u>COUNT IV</u>
**<u>Excessive Force - Violations of the Fourth and Fourteenth Amendments of the United States Constitution under 42 U.S.C. 1983</u>**
*William Parker vs., Defendant, Scirotto, Defendant Gay, Defendant Ford, and Defendant Ferrilli,*

83. Paragraphs one (1) through eighty-two (82), *supra*, are incorporated herein by reference as if the same were fully set forth at length herein.

84. The elements of a Fourth Amendment excessive force claim are: 1) the occurrence of a seizure, which was 2) unreasonable under the circumstances. Lamont ex rel. Estate of Quick v. New Jersey, No. 09–1845, 2011 WL 753856, at * 4 (3d Cir.2011) (citing Brower v. Cnty. of Inyo, 489 U.S. 593, 599, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989); Graham, 490 U.S. at 395–96); Kopec v. Tate, 361 F.3d 772, 776 (3d Cir.2004) Brown v. Cuscino, No. CIV. A. 08-1224, 2011 WL 1085892, at *13 (W.D. Pa. Mar. 21, 2011), aff'd sub nom. Brown v. Cwynar, 484 F. App'x 676 (3d Cir. 2012)

85. In Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Court held that the question whether an officer has used excessive force "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight…" 109 S.Ct. 1865. Kisela v. Hughes, 584 U.S. 100, 103, 138 S. Ct. 1148, 1152, 200 L. Ed. 2d 449 (2018).

86. City of Pittsburgh, Bureau of Police, Chief Larry Scirotto ordered Defendants Gay and Ford to "take him [Mr. Parker] down to the ground now, arrest him."

87. Mr. Parker was not committing a crime, was not violent, was not resisting arrest, and was compliant with officers' commands.

88. A use of force must be reasonable and proportional under the circumstances.

89. A use of force against a compliant person is manifestly unreasonable and no force is justified.

90. The alleged crimes for which the Defendants were intending to arrest Mr. Parker for were minor disorderly conduct offenses.

91. Mr. Parker did not try to escape.

92. Mr. Parker was a peaceful protestor who was known to the Defendants and was not an immediate threat to the officers or others as he was merely walking along and engaging in a constitutionally protected activity of redressing his government.

93. Despite Mr. Parker engaging in Constitutionally protected free speech, Defendant Scirotto, acting as Chief law enforcement officer of the City of Pittsburgh Bureau of Police, ordered not only the arrest of Mr. Parker, but directed Defendant Gay to use force against him while doing so. Mr. Parker was compliant, did not resist, was not a flight risk, and was engaged in peaceful protest when the use of force was ordered to be used against him.

94. Following Defendant Scirotto's order, Defendant Ford ran to Mr. Parker's location, kicked his legs out from under him causing pain and injury to Mr. Parker's knees and head, and forcefully handcuffed him.[6]

95. Defendants Gay and Ford placed their entire body weight upon Mr. Parker despite his compliance.

---

[6] See Affidavit of Probable Cause, Complaint/Incident Number ASAP-776667/2391997

96. Defendant Scirotto then forcefully pulled Mr. Parker from the ground, despite not being certified by the Municipal Police Officer's Education and Training Commission at the time.

97. While walking Mr. Parker across the street, Defendant Scirotto stated to Mr. Parker, "the show is over now bitch." A clear statement of retaliation for Mr. Parker's protest of Defendant Gainey.

98. Mr. Parker was transferred to the custody of Defendant Ferrilli who searched Mr. Parker without his consent.

99. While Mr. Parker was standing in the custody of Defendant Ferrilli, Defendant Ferrilli without reason or justification began twisting Mr. Parker's arm and using the handcuffs to inflict pain to Mr. Parker. Mr. Parker expressed that he was in pain and asked Defendant Ferrilli to stop with no avail.

100.       At no time prior to, during, or after Mr. Parker's arrest was force justifiable or reasonable as Mr. Parker was at all times compliant.

**WHEREFORE**, Plaintiff respectfully requests that (after a jury trial consisting of twelve jurors) this Honorable Court enter judgment in favor of Plaintiff against all Defendants jointly and severally for compensatory damages, punitive damages, interest, reasonable attorney's fees pursuant to 42 U.S.C. 1988, costs and expert fees in an amount in excess of $750,000.00 (Seven Hundred Fifty Thousand Dollars and Zero Cents). In the alternative, Plaintiff respectfully requests that this Honorable Court enter such other judgment, order, or decree in Plaintiff's favor that the Court deems just and proper.

**<u>JURY TRIAL DEMANDED</u>**

## COUNT V
## Unlawful Search and Seizure - Violations of the Fourth and Fourteenth Amendments of the United States Constitution under 42 U.S.C. 1983

*William Parker vs. Defendant Scirotto, Defendant Gay, Defendant Ford, and Defendant Ferrilli*

101.    Paragraphs one (1) through one hundred (100), *supra*, are incorporated herein by reference as if the same were fully set forth at length herein.

102.    The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." US. CONST. amend. IV. Wagner v. Holtzapple, 101 F. Supp. 3d 462, 472 (M.D. Pa. 2015).

103.    "[T]he Fourth Amendment protects people, not places." Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967). "[W]hat he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." Id. "Wherever a man may be, he is entitled to know that he will remain free from unreasonable searches and seizures." Id. at 359, 88 S.Ct. 507. A search to which an individual consents meets Fourth Amendment requirements. See id. at 357, 88 S.Ct. 507. Wagner v. Holtzapple, 101 F. Supp. 3d 462, 472 (M.D. Pa. 2015).

104.    Mr. Parker was unlawfully detained and arrested for engaging in constitutionally protected free speech redressing his grievances with his government on June 17, 2023.

105.    Defendants had neither reasonable articulable suspicion nor probable cause to detain or arrest Mr. Parker.

106.    Despite this fact, Mr. Parker was violently arrested upon the order of Defendant Scirotto.

107.    Following his arrest he was searched. (See Exhibt "A").

108.    The search consisted of his body and the interior of his pockets and was performed by Officer Ferrilli with the assistance of Defendants Gay and Ford.

109.    Mr. Parker's personal belongings were seized from his body and taken from him post arrest.

110.    The Defendants did not possess a warrant to search the person of Mr. Parker.

**WHEREFORE**, Plaintiff respectfully requests that (after a jury trial consisting of twelve jurors) this Honorable Court enter judgment in favor of Plaintiff against all Defendants jointly and severally for compensatory damages, punitive damages, interest, reasonable attorney's fees pursuant to 42 U.S.C. 1988, costs and expert fees in an amount in excess of $750,000.00 (Seven Hundred Fifty Thousand Dollars and Zero Cents). In the alternative, Plaintiff respectfully requests that this Honorable Court enter such other judgment, order, or decree in Plaintiff's favor that the Court deems just and proper.

## JURY TRIAL DEMANDED

## COUNT VI
## Civil Conspiracy/Civil Conpiracy to Violate Rights under 42 U.S.C. 1985 and 42 U.S.C. 1983
*William Parker vs. Defendant Gainey, Defendant, Scirotto, Defendant Gay, Defendant Ford, Defendant Ferrilli, and Defendant Hallam*

111.    Paragraphs one (1) through one hundred ten (110), *supra*, are incorporated herein by reference as if the same were fully set forth at length herein.

112.    To establish a constitutional conspiracy claim, Plaintiff must prove: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property

or deprived of any right or privilege of a citizen of the United States. Carpenters v. Scott, 463 U.S. 825, 828–29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). Bower v. Lawrence Cnty. Child. & Youth Servs., 964 F. Supp. 2d 475, 488 (W.D. Pa. 2013).

113.    Defendants Gainey, Scirotto, Ferrilli, Gay, Ford, and Hallam conspired by knowingly and tacitly acting in concert through use of force.

114.    The purpose of the conspiracy was to interrupt, deter, and ultimately deny Mr. Parker his First Amendment right to criticize and redress his elected official, namely, Defendant Gainey.

115.    Mr. Parker was pushed, shoved, struck, had pain inflicted upon him and was ultimately arrested by the Defendants Gainey, Scirotto, Ferrilli, Gay, Ford, and Hallam.

116.    As a result of the conspiracy, Mr. Parker was deprived of his liberty and freedom for over fifteen hours in the Allegheny County Jail.

**WHEREFORE**, Plaintiff respectfully requests that (after a jury trial consisting of twelve jurors) this Honorable Court enter judgment in favor of Plaintiff against all Defendants jointly and severally for compensatory damages, punitive damages, interest, reasonable attorney's fees pursuant to 42 U.S.C. 1988, costs and expert fees in an amount in excess of $750,000.00 (Seven Hundred Fifty Thousand Dollars and Zero Cents). In the alternative, Plaintiff respectfully requests that this Honorable Court enter such other judgment, order, or decree in Plaintiff's favor that the Court deems just and proper.

**JURY TRIAL DEMANDED**

### COUNT VII
**42 U.S.C. 1983 Monell Liability – Failure to Train/Supervise, Policy/Custom, Participation**
*William Parker vs. City of Pittsburgh*

117.    Paragraphs one (1) through one hundred sixteen (116), *supra*, are incorporated herein by reference as if the same were fully set forth at length herein.

118.    To bring a section 1983 claim against a municipality for failure to train and supervise its employees, a plaintiff must show that: (1) " '[he] [was] deprived of rights, privileges, or immunities secured by the Constitution and laws,' " and (2) "that the deprivation of those rights was the result of an official government policy or custom." Mulholland, 706 F.3d at 238. However, because "the policy concerns a failure to train or supervise municipal employees, liability under section 1983 [also] requires a showing that the failure amounts to deliberate indifference to the rights of persons with whom those employees will come into contact." Thomas v. Cumberland Cty., 749 F.3d 217, 222 (3d Cir. 2014) (internal quotation marks and citation omitted). Fitzgerald v. Martin, No. CV 16-3377, 2017 WL 3310676, at *17 (E.D. Pa. Aug. 3, 2017).

119.    "Deliberate indifference… require[es] proof that a municipal actor disregarded a known or obvious consequence of his action." Connick v. Thompson, 563 U.S. 51, 61 (2011) (internal quotation marks and citation omitted). Additionally, [a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train. Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the deliberate indifference—necessary to trigger municipal liability. Id. (internal quotation marks and citation omitted). However, in certain narrow circumstances, even in the absence of a pattern of similar violations, a "failure to train may amount to deliberate indifference where the need for more or different training is obvious, and inadequacy very likely to result in violation of constitutional rights." Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir. 1999) (citation omitted); see also City of Canton, Ohio

v. Harris, 489 U.S. 378, 390 n.10 (1989) Fitzgerald v. Martin, No. CV 16-3377, 2017 WL

3310676, at *18 (E.D. Pa. Aug. 3, 2017)

120.    Mr. Parker was arrested for engaging in constitutionally protected free speech under the

First Amendment of the United States Constitution.

121.    As a result, he was deprived of his privileges under the First, Fourth, Fifth, and Fifteenth

Amendments of the United States Constitution.

122.    His arrest was a result of a custom of the City of Pittsburgh, particularly through the Bureau

of Police, disregarding constitutionally protected rights such as freedom of speech.

This ongoing custom can be seen through Hackbart v. City of Pittsburgh, No. 2:07CV157, 2009

WL 10728584 (W.D. Pa. Mar. 23, 2009), wherein freedom of speech was blatantly ignored

despite training, the 2018 arrests of peaceful protesters during the 2018 Antwon Rose protests

whereafter then Mayor Peduto called for police reform regarding protests, and the 2020 protest

arrests Rulli et al. v. City of Pittsburgh et al. - 2:20-cv-00965 wherein the Bureau of Police again

disregarded its polices and arrested peaceful protesters.

123.    The continual conscious disregard of protesters right of freedom of speech constitutes a

custom within the City of Pittsburgh and the City of Pittsburgh Bureau of Police.

124.    To establish a Section 1983 claim for a municipality's failure to train and supervise

employees, a plaintiff must (1) identify, with particularity that what the supervisory officials

failed to do demonstrates "deliberate indifference," and (2) [show] a close causal link between

the alleged failure and the alleged injury. Daniels v. Delaware, 120 F.Supp.2d 411, 423

(D.Del.2000) (citations omitted); see Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir.1997).

Nykiel v. Borough of Sharpsburg, 778 F. Supp. 2d 573, 586 (W.D. Pa. 2011)

125. In the instant matter, the arrest of Mr. Parker was ordered by the Chief law enforcement officer of the Pittsburgh Bureau of Police, Defendant Scirotto. Further, the arrest was ignored and glossed over by the Chief Executive Officer of the City of Pittsburgh, Defendant/Mayor Gainey.

126. Individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir.1989). A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004)

127. Through their actions and inactions, Defendants Scirotto and Gainey showed deliberate indifference to the deprivation of rights of freedom of speech and unlawful arrest demonstrating a continued pattern and practice within the City of Pittsburgh.

128. The second theory of liability provides that a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations. See Baker v. Monroe Township, 50 F.3d 1186, 1190–91 (3d Cir.1995). A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004).

129. In the instant matter, Defendant Scirotto, acting as the Chief law enforcement officer of the Pittsburgh Bureau of Police ordered the arrest and use of force against Mr. Parker. Additionally, he physically pulled Mr. Parker from the ground and made known to Mr. Parker he was arrested for his free speech activities when he stated, ""the show is over now bitch."

130. Further, Defendant Gainey was present and had knowledge that Mr. Parker was being arrested and his rights violated by Defendant Scirotto.

**WHEREFORE**, Plaintiff respectfully requests that (after a jury trial consisting of twelve jurors) this Honorable Court enter judgment in favor of Plaintiff against all Defendants jointly and severally for compensatory damages, punitive damages, interest, reasonable attorney's fees pursuant to 42 U.S.C. 1988, costs and expert fees in an amount in excess of $750,000.00 (Seven Hundred Fifty Thousand Dollars and Zero Cents). In the alternative, Plaintiff respectfully requests that this Honorable Court enter such other judgment, order, or decree in Plaintiff's favor that the Court deems just and proper.

## JURY TRIAL DEMANDED

### COUNT VIII
### Failure to Intervene - Violations of the Fourth and Fourteenth Amendments of the United States Constitution under 42 U.S.C. 1983

*William Parker vs. Defendant Scirotto, Defendant Gay, Defendant Ford, and Defendant Ferrilli*

131.    Paragraphs one (1) through one hundred thirty (130), *supra*, are incorporated herein by reference as if the same were fully set forth at length herein.

132.    To establish a Fourth Amendment violation for failure to intervene, a plaintiff must establish that: (1) the police officer failed or refused to intervene when a constitutional violation took place in his or her presence or with his or her knowledge; and (2) there was a "realistic and reasonable opportunity to intervene." See Smith v. Mensinger, 293 F.3d 641, 650–51 (3d Cir.2002); Fernandez v. Stack, No. 03–4846(JAP), 2006 WL 777033, at *12 n. 8 (D.N.J. Mar. 27, 2006). Lora-Pena v. Denney, 760 F. Supp. 2d 458, 468 (D. Del. 2011).

133.    Defendants Scirotto, Gay, Ford, and Ferrilli were all employed as police officers with the City of Pittsburgh Bureau of Police at the time of Mr. Parkers arrest.

134.    Defendants Scirotto, Gay, Ford, and Ferrilli did not or refused to stop the arrest of Mr. Parker who was engaged in constitutionally protected free speech guaranteed under the First Amendment of the United States Constitution. Further, Defendants Scirotto, Gay, Ford, and

Ferrilli failed to prevent the excessive use of force against Mr. Parker who was a non-violent and compliant citizen engaging in protest.

135.    Defendants Scirotto, Gay, Ford, and Ferrilli all had the opportunity to prevent the arrest and use of force against Mr. Parker as they were all present and could, or should have, verbally ordered the actions desist or physically prevented Mr. Parker being subjected to excessive force.

   **WHEREFORE**, Plaintiff respectfully requests that (after a jury trial consisting of twelve jurors) this Honorable Court enter judgment in favor of Plaintiff against all Defendants jointly and severally for compensatory damages, punitive damages, interest, reasonable attorney's fees pursuant to 42 U.S.C. 1988, costs and expert fees in an amount in excess of $750,000.00 (Seven Hundred Fifty Thousand Dollars and Zero Cents). In the alternative, Plaintiff respectfully requests that this Honorable Court enter such other judgment, order, or decree in Plaintiff's favor that the Court deems just and proper.

**JURY TRIAL DEMANDED**

## COUNT IX
### State Law Claim - Battery
*William Parker vs. Defendant Scirotto, Defendant Gay, Defendant Ford, Defendant Ferrilli, and Defendant Hallam*

136.    Paragraphs one (1) through one hundred thirty-five (135), *supra*, are incorporated herein by reference as if the same were fully set forth at length herein.

137.    To establish a claim for the intentional tort of battery, a plaintiff must show that the defendant made a harmful or offensive contact with a person and that the contact resulted from an act intended to cause the plaintiff or a third person to suffer such a contact or intended to cause an apprehension of such imminent contact. See Herr v. Booten, 398 Pa.Super. 166, 580 A.2d 1115, 1117 (1990) (quoting Prosser & Keeton, Law of Torts at 39 (5th ed.1984)); Lakits v.

Joseph York, 258 F.Supp.2d 401, 407 (E.D.Pa.2003). Schall v. Vazquez, 322 F. Supp. 2d 594, 601 (E.D. Pa. 2004)

138.    On June 17, 2023, Defendant Ford intentionally, pushed, bumped, or otherwise caused his body to come into contact with Mr. Parker to dissuade Mr. Parker from peacefully protesting.

139.    Further, Defendant Ford violently kicked Mr. Parker's legs out from under him slamming him to the ground causing pain and injury to his knees and head at the order of Defendant Scirotto.

140.    Mr. Parker did not invite or permit the contact and the contact is physically offensive to Mr. Parker.

141.    The unwanted and uninvited intentional contact constitutes battery.

142.    On June 17, 2023, Defendant Gay intentionally, pushed, bumped, or otherwise caused his body to come into contact with Mr. Parker to dissuade Mr. Parker from peacefully protesting.

143.    Further, Defendant Gay attempted to knock Mr. Parker into obstacles namely a road sign.

144.    Mr. Parker did not invite or permit the contact and the contact is physically offensive to Mr. Parker.

145.    The unwanted and uninvited intentional contact constitutes battery.

146.    On June 17, 2023, Defendant Ferrilli intentionally twisted Mr. Parker's arm and used the handcuffs to inflict pain upon Mr. Parker while he was in police custody, compliant, and non-combative.

147.    Mr. Parker did not invite or permit the contact and the contact is physically offensive to Mr. Parker.

148.    The unwanted and uninvited intentional contact constitutes battery.

149.    On June 17, 2023, Defendant Hallam intentionally, pushed, bumped, or otherwise caused her body to come into contact with Mr. Parker to dissuade Mr. Parker from peacefully protesting.

150.    Mr. Parker did not invite or permit the contact and the contact is physically offensive to Mr. Parker.

151.    The unwanted and uninvited intentional contact constitutes battery.

**WHEREFORE**, Plaintiff respectfully requests that (after a jury trial consisting of twelve jurors) this Honorable Court enter judgment in favor of Plaintiff against all Defendants jointly and severally for compensatory damages, punitive damages, interest, reasonable attorney's fees pursuant to 42 U.S.C. 1988, costs and expert fees in an amount in excess of $750,000.00 (Seven Hundred Fifty Thousand Dollars and Zero Cents). In the alternative, Plaintiff respectfully requests that this Honorable Court enter such other judgment, order, or decree in Plaintiff's favor that the Court deems just and proper.

**JURY TRIAL DEMANDED**

**COUNT X**
**State Law Claim - False Imprisonment**
*William Parker vs. Defendant Ford, Defendant Gay, and Defendant Scirotto*

152.    Paragraphs one (1) through one hundred fifty-one (151), *supra*, are incorporated herein by reference as if the same were fully set forth at length herein.

153.    In Pennsylvania, false imprisonment requires "(1) the detention of another person (2) that is unlawful." Manley v. Fitzgerald, 997 A.2d 1235, 1241 (Pa. Cmwlth. 2010); see also *980 Renk v. City of Pittsburgh, 537 Pa. 68, 641 A.2d 289, 293 (1994) (same). Braswell v. Wollard, 2020 PA Super 279, 243 A.3d 973, 979–80 (2020).

154.    On June 17, 2023, Mr. Parker was subject to physical arrest by Defendants Ford and Gay which was ordered by Defendant Scirotto.

155.    Defendant Ford filed a criminal complaint against Mr. Parker alleging the aforementioned crimes.

156.    The charged crimes were predicated upon an arrest lacking probable cause as Mr. Parker was not disorderly and instead was engaged in speech protected under the First Amendment of the United Stated Constitution.

157.    As there was no probable cause for the arrest the arrest constitutes an unlawful arrest.

158.    Mr. Parker was incarcerated for over fifteen hours in the Allegheny County Jail and deprived of his liberty and freedom.

**WHEREFORE**, Plaintiff respectfully requests that (after a jury trial consisting of twelve jurors) this Honorable Court enter judgment in favor of Plaintiff against all Defendants jointly and severally for compensatory damages, punitive damages, interest, reasonable attorney's fees pursuant to 42 U.S.C. 1988, costs and expert fees in an amount in excess of $750,000.00 (Seven Hundred Fifty Thousand Dollars and Zero Cents). In the alternative, Plaintiff respectfully requests that this Honorable Court enter such other judgment, order, or decree in Plaintiff's favor that the Court deems just and proper.

**JURY TRIAL DEMANDED**

## COUNT XI
### State Law Claim – Malicious Prosecution
*William Parker vs. Defendant, Scirotto, Defendant Gay, Defendant Ford, and Defendant Ferrilli,*

159.    Paragraphs one (1) through one hundred fifty-eight (158), *supra*, are incorporated herein by reference as if the same were fully set forth at length herein.

160.    Malicious prosecution in Pennsylvania has three elements: (1) the defendant has initiated criminal proceedings against the plaintiff without probable cause; (2) the defendant has acted deliberately with malice; and (3) the proceedings have terminated in favor of the plaintiff. See

Manley v. Fitzgerald, 997 A.2d 1235, 1241 (Pa. Cmwlth. 2010). Braswell v. Wollard, 2020 PA Super 279, 243 A.3d 973, 977 (2020)

161.    On June 17, 2023, Mr. Parker was subject to physical arrest by Defendants Ford and Gay which was ordered by Defendant Scirotto.

162.    Defendant Ford filed a criminal complaint against Mr. Parker alleging the aforementioned crimes. (See Exhibit "A").

163.    The charged crimes were predicated upon an arrest lacking probable cause as Mr. Parker was not disorderly and instead was engaged in speech protected under the First Amendment of the United Stated Constitution.

164.    The Defendants acted intentionally and maliciously intended to deprive Mr. Parker of the right to redress his government and to silence his political message.

165.    Malice is further shown by the infliction of excessive force against Mr. Parker who was a non-violent and non-combative protester.

166.    Defendants' actions served to *punish* Mr. Parker for his promotion of a political message that was critical of their boss, Defendant Gainey.

167.    As there was no probable cause for the arrest the arrest constitutes an unlawful arrest.

168.    Mr. Parker was incarcerated for over fifteen hours in the Allegheny County Jail and deprived of his liberty and freedom.

169.    Ultimately, the charges filed at CR3411-23/OTN R 908770-2 were dismissed and/or nolle prossed by the District Attorney's Office of Allegheny County.

**WHEREFORE**, Plaintiff respectfully requests that (after a jury trial consisting of twelve jurors) this Honorable Court enter judgment in favor of Plaintiff against all Defendants jointly and severally for compensatory damages, punitive damages, interest, reasonable attorney's fees

pursuant to 42 U.S.C. 1988, costs and expert fees in an amount in excess of $750,000.00 (Seven Hundred Fifty Thousand Dollars and Zero Cents). In the alternative, Plaintiff respectfully requests that this Honorable Court enter such other judgment, order, or decree in Plaintiff's favor that the Court deems just and proper.

**<u>JURY TRIAL DEMANDED</u>**

<u>COUNT XII</u>
<u>State Law Claim – Abuse of Process</u>
*William Parker vs. Defendant Gainey, Defendant Scirotto, Defendant Gay, Defendant Ford and Defendant Hallam*

170.    Paragraphs one (1) through one hundred sixty-nine (169), *supra*, are incorporated herein by reference as if the same were fully set forth at length herein.

171.    To establish a claim for abuse of process under the law of Pennsylvania, it must be shown that the defendant (1) used a legal process against the plaintiff; (2) primarily to accomplish a purpose for which the process was not designed, and (3) that harm was caused to the plaintiff as a result. Id. Keim v. Cnty. of Bucks, 275 F. Supp. 2d 628, 634–35 (E.D. Pa. 2003).

172.    On June 17, 2023, Mr. Parker was subject to physical arrest by Defendants Ford and Gay which was ordered by Defendant Scirotto.

173.    Defendant Ford filed a criminal complaint against Mr. Parker alleging the aforementioned crimes. (See Exhibit "A").

174.    Defendant Gainey and Defendant Gay are purported victims of Mr. Parker in the criminal proceedings.

175.    The charged crimes were predicated upon an arrest lacking probable cause as Mr. Parker was not disorderly and instead was engaged in speech protected under the First Amendment of the United Stated Constitution.

176.    The Defendants acted intentionally maliciously intended to deprive Mr. Parker of the right to redress his government and to silence his political message.

177.    Malice is further shown by the infliction of excessive force against Mr. Parker who was a non-violent and non-combative protester.

178.    Defendants' actions served to *punish* Mr. Parker for his promotion of a political message that was critical of their boss, Defendant Gainey.

179.    As there was no probable cause for the arrest the arrest constitutes an unlawful arrest.

180.    Mr. Parker was incarcerated for over fifteen hours in the Allegheny County Jail and deprived of his liberty and freedom.

181.    Ultimately, the charges filed at CR3411-23/OTN R 908770-2 were dismissed and/or nolle prossed by the District Attorney's Office of Allegheny County.

**WHEREFORE**, Plaintiff respectfully requests that (after a jury trial consisting of twelve jurors) this Honorable Court enter judgment in favor of Plaintiff against all Defendants jointly and severally for compensatory damages, punitive damages, interest, reasonable attorney's fees pursuant to 42 U.S.C. 1988, costs and expert fees in an amount in excess of $750,000.00 (Seven Hundred Fifty Thousand Dollars and Zero Cents). In the alternative, Plaintiff respectfully requests that this Honorable Court enter such other judgment, order, or decree in Plaintiff's favor that the Court deems just and proper.

**JURY TRIAL DEMANDED**

Respectfully submitted,
SMT LEGAL

/s/Ryan Nye Gailey
Ryan Nye Gailey, Esq.