IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| WILLIAM PARKER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>EDWARD C. GAINEY, et al., )<br>)<br>Defendants. ) | No. 2:23-cv-2102<br><br>JURY TRIAL DEMANDED |

**DEFENDANT CITY OF PITTSBURGH'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**I.   INTRODUCTION**

Plaintiff William Parker's ("Mr. Parker") Second Amended Complaint fails to state a viable *Monell* claim against the City of Pittsburgh ("the City"). Mr. Parker's Second Amended Complaint sets forth two theories of municipal liability: (1) the City's alleged custom of "disregarding constitutionally protected rights such as freedom of speech," ECF No. 43 ¶ 159; and (2) the City's alleged failure to train or supervise its employees. *Id.* ¶¶ 17, 155.[1] However, Mr. Parker does not plead sufficient facts to state a claim under either theory of *Monell* liability.

First, Mr. Parker fails to identify a widespread pattern of behavior that would establish a "custom." Second, Mr. Parker likewise fails to point to other incidents of

---

[1] The heading of Mr. Parker's *Monell* claim also contains language regarding "policy" and "participation," but does not include any substantive discussion of these theories of liability. With respect to the "participation" theory of liability, Mr. Parker cites to the standard for supervisory liability for claims brought under Section 1983, which is distinct from *Monell* liability against a municipality. *See* EFC No. 43 ¶ 164.

1

constitutional violations showing that the City should have been aware officers were in need of additional training or supervision. Moreover, and critically, Mr. Parker fails to sufficiently plead a causal connection between the alleged customs, and/or failures identified in his Second Amended Complaint and his alleged constitutional injuries. Because Mr. Parker's Complaint fails to sufficiently state a *Monell* claim against the City, all claims against the City should be dismissed.

## II.   BACKGROUND[2]

On June 17, 2023, Mr. Parker attended the City's Juneteenth parade in the Hill District to protest some of Mayor Ed Gainey's policies and mayoral decisions. ECF No. 43 ¶¶ 21, 23-25. Mayor Gainey, Chief Scirotto, Detective Ford, Detective Gay, and "eventually [Detective] Ferrilli" were also at the parade. *Id.* ¶ 22. Mr. Parker claims that while he was protesting at the parade, Detective Ford pushed Mr. Parker. *Id.* ¶ 32. Mr. Parker continued to protest, at which point he claims Detective Gay "ran into Mr. Parker" and later "bumped or shoved" him. *Id.* ¶¶ 36, 40. Mr. Parker claims he then had a verbal exchange with Detective Gay. *Id.* ¶ 42.

After this exchange, Chief Scirotto allegedly ordered Detective Gay to arrest Mr. Parker. *Id.* ¶ 43. Mr. Parker claims that Detective Ford kicked Mr. Parker's legs out from under him and forcibly handcuffed him. *Id.* ¶ 46. Mr. Parker claims Detectives Ford and Gay put their "entire body weight" upon Mr. Parker, and Chief Scirotto then pulled Mr. Parker up from the ground. *Id.* ¶¶47-48. Mr. Parker was

---

[2] The City summarizes and accepts as true facts alleged in Mr. Parker's Second Amended Complaint for purposes of this Motion to Dismiss only.

2

then turned over to custody of Detective Ferrilli, who searched Mr. Parker. *Id.* ¶ 50. Mr. Parker claims Detective Ferrilli twisted Mr. Parker's arm and used handcuffs "to inflict pain on Mr. Parker." *Id.* ¶ 51. Mr. Parker was eventually charged with numerous crimes stemming from the incident at the parade. *Id.* ¶ 53. Detective Ford authored the affidavit of probable cause in support of Mr. Parker's arrest. *Id.* ¶ 53, Exhibit A (criminal complaint).

Mr. Parker's Second Amended Complaint also details alleged customs and failures he attributes to the City. Mr. Parker claims that City had a "custom of . . . disregarding constitutionally protected rights such as freedom of speech." ECF No. 43 ¶ 159. To support this claim, Mr. Parker cites to two lawsuits, arrests of protestors in 2018, and his own arrest. *Id.* ¶ 159. Mr. Parker also claims that the City failed to properly train and supervise its employees. ¶ 17, 155. Though he does not explicitly state so, it appears Mr. Parker alleges that the City has properly failed to train or supervise its employees "regarding peaceful protestors." *Id.* ¶ 156.

### III. STANDARD OF REVIEW

To survive a motion to dismiss, complaints must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plaintiff must allege facts sufficient to "'raise a right to relief beyond a speculative level.'" *Robinson v. Family Dollar, Inc.*, 679 F. App'x 126, 131 (3d Cir. 2017). Though courts

must accept all well-pleaded facts as true, this obligation does not extend to legal conclusions "couched as . . . factual allegation[s]." *Twombly*, 550 U.S. at 555. Moreover, plaintiffs "[can]not attempt to use discovery as a fishing expedition to determine the existence of . . . facts necessary to establish a legally adequate [claim]." *White v. Hon Co.*, 520 F. App'x 93, 95 (3d Cir. 2013).

## IV.   ARGUMENT

### A.   Mr. Parker's Second Amended Complaint fails to sufficiently plead that the City had a custom that caused his alleged constitutional injuries.

To establish a municipal "custom" existed, Mr. Parker must show there was a "course of conduct . . . so permanent and well settled as to virtually constitute law." *Andrews v. Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690 (1978)). Mr. Parker must also plead facts showing causation; he must demonstrate an "affirmative link or plausible nexus" between the municipality's alleged custom and his alleged constitutional injuries. *Bielevicz v. Dubinon*, 915 F.2d 845, 854 (3d Cir. 1990). Thus, to sustain a *Monell* claim based on alleged municipal custom, "the plaintiff must simply establish a municipal custom coupled with causation—*i.e.*, that policymakers were aware of *similar* unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury." *Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996) (emphasis added).

Mr. Parker relies on three facts in support of his claim that the City had an unconstitutional "custom" of "disregarding constitutionally protected rights such as freedom of speech." ECF No. 43 ¶ 159. First, Mr. Parker relies on the fact that two

4

lawsuits involving protests have been filed against the City and its employees. Second, Mr. Parker relies on allegations that protestors were arrested in 2018. Third and finally, Mr. Parker points to his own arrest as evidence of the City's alleged custom. These facts are insufficient to sustain his *Monell* claim under a "custom" theory of liability. *Id.* ¶ 159.

With respect to lawsuits, Mr. Parker seeks to establish his *Monell* claim by relying on two lawsuits filed against the City and its employees: (1) *Hackbart v. City of Pittsburgh*, Case No. 07-cv-00157; and (2) *Rulli v. City of Pittsburgh*, Case No. 2:20-cv-00965.[3] ECF No. 43 ¶ 159. However, the filing of lawsuits and citizen complaints, without more, is insufficient to establish that the City acquiesced to a custom of unconstitutional conduct by its police officers. *See Jean-Laurent v. Wilkerson*, 461 F. App'x 18, 22-23 (2d Cir. 2012) (plaintiff's citation to "various lawsuits involving inmate claims for the excessive use of force is not probative of the existence of an underlying policy that could be relevant here"). As reasoned by the Seventh Circuit in *Strauss v. City of Chicago*: "[T]he number of complaints filed, without more, indicates nothing. People may file a complaint for many reasons, or for no reason at all. That they filed complaints does not indicate that the policies that [plaintiff] alleges exist do in fact exist and did contribute to his injury." 760 F.2d 765, 768-69 (7th Cir. 1985). The *Strauss* Court further explained that, in order to prove his *Monell* claim, a plaintiff "would need to identify . . . what it was that made those prior arrests

---

[3] The City respectfully requests this Court take judicial notice pursuant to Fed. R. Evid. 201 that these cases resolved without a finding of liability.

illegal and to show that a similar illegality was involved in his case." *Id.* at 769. Because the plaintiff in *Strauss* failed to identify such similarities and relied only on the fact that complaints were filed, his *Monell* claim failed as a matter of law. *Id.* at 769-70.

Multiple district courts within the Third Circuit have applied this principle and similarly held that reliance on lawsuits and/or citizen complaints, without more, is insufficient to establish acquiescence to an unconstitutional custom. *See Sholtis v. City of Pittsburgh*, Civil Action No. 2:19-cv-0332, 2021 U.S. Dist. LEXIS 213756, at *37-39 (W.D. Pa. Nov. 4, 2021)* (Stickman, J.) (the plaintiff's reliance on a summary report of civilian complaints against individual defendant officer and several lawsuits against PBP officers was insufficient to establish the plaintiff's *Monell* claim); *Gonzalez v. Borough of Red Bank*, Civil Action No. 18-13009, 2020 U.S. Dist. LEXIS 74178, at *28 (D.N.J. Apr. 28, 2020) (adopting the *Strauss* rationale and holding that "evidence of other lawsuits filed against a municipality may only be relevant to a *Monell* claim where coupled with additional evidence that the municipality's efforts to evaluate the claims were so superficial as to suggest that its official attitude was one of indifference to the truth of the claim"); *Pharaoh v. Dewees*, No. 14-3116, 2016 U.S. Dist. LEXIS 59668, at *12 (E.D. Pa. May 4, 2016) (the plaintiff's reliance on prior excessive force lawsuits against individual defendant officer and municipality, without more, did not support plaintiff's *Monell* claim).

To show that the City acquiesced in the alleged customs at issue, a plaintiff must include facts demonstrating that the incidents underlying prior complaints and

6

lawsuits "deserved discipline and how the misconduct in those cases is similar to that involved in the present action." *Mariani v. Pittsburgh*, 624 F. Supp. 506, 511 (W.D. Pa. 1986). Mr. Parker does not include any such facts. Instead, Mr. Parker simply concludes that these lawsuits evidence a "custom" because they involved protests and/or arrests of protestors. Without more, these two lawsuits are insufficient to show an unconstitutional "custom" of disregarding constitutionally protected rights such as freedom of speech." ECF No. 43 ¶ 159.

Similarly, Mr. Parker relies on the allegation that peaceful protestors were arrested in 2018 to show the City's alleged custom. Like lawsuits and citizen complaints, Mr. Parker must show how these arrests are similar to that of his own. *Beck*, 89 F.3d at 972; *see Black-Meadows v. Deptford Twp.*, No. CV 20-6951, 2022 WL 16695191, at *3 (D.N.J. Nov. 3, 2022) ("plaintiffs commonly prove the existence of an unconstitutional municipal policy or custom by pointing to incidents factually similar to the alleged constitutional violation."). Here, aside from his conclusory allegations, Mr. Parker does not plead any facts that the arrests of protestors in 2018 amounted to constitutional violations or were similar to his own arrest. Thus, his reliance on these arrests is insufficient to sustain his *Monell* claim.

Finally, Mr. Parker relies on his own arrest as evidence of the City's alleged unconstitutional custom. ECF No. 43 ¶ 159. The Supreme Court has held that proof of a single incident of "unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a

municipal policymaker." *Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985). The Third Circuit explained the rationale underlying this rule: "[A] single incident of police misbehavior by a single policeman is insufficient as sole support for an inference that a municipal policy or custom caused the incident." *Brown v. City of Pittsburgh*, 586 F.3d 263, 292 (3d Cir. 2009) (citing *Tuttle*, 471 U.S. at 832 (Brennan, J., concurring)). Here, even accepting as true that Mr. Parker's arrest amounted to a constitutional violation, this is insufficient to prove the City itself had a widespread custom of unconstitutional arrests of protestors. Accordingly, his reliance on his own arrest to sustain his *Monell* claim is insufficient.

For these reasons, Mr. Parker's Second Amended Complaint lacks the factual support necessary to survive a motion to dismiss. Accordingly, Mr. Parker's claim for *Monell* liability on the basis of an alleged City custom should be dismissed.

**B.**     Mr. Parker's Second Amended Complaint fails to state a *Monell* claim against the City for failure to train and/or supervise its officers.

Mr. Parker's *Monell* claim against the City for failure to train and/or and supervise its officers fails because the Second Amended Complaint lacks facts showing that the City itself was deliberately indifferent to citizens' constitutional rights. A municipality's failure to train or supervise its employees may result in liability where the failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Thus, the Third Circuit has explained that establishing "municipal

8

liability on a failure to train claim under § 1983 is difficult." *Reitz v. Cty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997).

Plaintiffs may plead a municipality's deliberate indifference in one of two ways. First, a plaintiff may attempt to show a "pattern of similar constitutional violations by untrained employees." *Estate of Paone v. Plymouth Twp.*, No. 22-2178, 2022 U.S. Dist. LEXIS 218251, at *13 (E.D. Pa. Dec. 5, 2022). This approach can be used to show "city policymakers [were] on actual or constructive notice that a particular omission in their training program cause[d] city employees to violate citizens' constitutional right[.]" *Connick*, 563 U.S. at 61. Thus, a municipality "may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.* Second, a plaintiff may attempt to show deliberate indifference in a failure-to-train claim by showing that "the need for training in particular circumstances is 'so obvious' that a failure to do so would amount to deliberate indifference." *Estate of Paone*, 2022 U.S. Dist. LEXIS 218251, at *13.

When analyzing complaints attempting to plead deliberate indifference through a pattern of constitutional violations, courts in the Third Circuit have rejected *Monell* failure-to-train claims that do not point to prior instances of similar misconduct. *See Wood v. Williams*, 568 F. App'x 100, 105 (3d Cir. 2014); *Deemer v. City of Oil City*, No. 1:19-CV-380, 2021 U.S. Dist. LEXIS 182885 (W.D. Pa. Sept. 24, 2021) (dismissing claim when plaintiff did not allege any facts about police training, or contain allegations of prior misconduct caused by allegedly inadequate supervision and training); *Thivener v. Nero*, No. 22-238, 2023 U.S. Dist. LEXIS 114010, at *5–*6

9

(W.D. Pa. June 30, 2023) ("Dismissal of Plaintiff's *Monell* claim is also warranted. Plaintiff does not attempt to identify prior, similar incidents revealing a pattern of constitutional violations.").

As discussed above, Mr. Parker attempts to show the City's deliberate indifference by pointing to two lawsuits that did not result in liability and an unspecified number of protestor arrests in 2018 to establish instances of similar misconduct. *Id.* ¶ 159. But, Mr. Parker fails to show that these incidents actually involved misconduct or were similar to his own arrest. When legal conclusions are disregarded, *id.* ¶¶ 17, 155, 156, 161, Mr. Parker has failed to plead any facts showing that the City was on notice of a risk of constitutional violations such that its failure to train or supervise amounted to deliberate indifference.

With respect to "single incident" *Monell* liability for failure to train, a plaintiff must plead facts showing "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights[.]" *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). To demonstrate deliberate indifference from a "single-incident violation," the plaintiff must show "the risk of injury [was] a 'highly predictable consequence' of the municipality's failure to train or supervise its employees." *Santiago v. City of Harrisburg*, No. 1:19-CV-898, 2020 U.S. Dist. LEXIS 50359, at *29 (M.D. Pa. Mar. 20, 2020) (quoting *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 225 (3d Cir. 2014)).

Here, Mr. Parker appears to allege that the City failed to train its officers to respond to citizen protests. *See* ECF No. 43 ¶ 159. In support of this allegation, he

10

recites the standard for a single-incident theory of *Monell* liability. *Id.* ¶ 156. The Second Amended Complaint is devoid of any facts "support[ing] the likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights." *Santiago*, 2020 U.S. Dist. LEXIS 50359, at *30. Thus, Mr. Parker fails to plead facts to meet the stringent standard of single-incident *Monell* liability for failure-to-train, and his claim should be dismissed.

> **C.** <u>Mr. Parker's allegations do not plausibly demonstrate that the City caused his alleged Constitutional injuries.</u>

Under any theory of *Monell* liability, the plaintiff must plead facts showing that the City's policy, custom, or failure/inadequacy was the "moving force" behind his alleged injuries. *Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 399 (1997) ("plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged"); *Reitz*, 125 F.3d at 145 (applying the "moving force" requirement in the context of a failure-to-train claim).

The causation requirement is critical; a plaintiff's failure to set forth facts showing a causal connection between a municipal policy, custom, or failure and his alleged constitutional injury is fatal to a claim for *Monell* liability. *See Casciano v. City of Paterson*, Civil Action No. 19-9475, 2022 U.S. Dist. LEXIS 9293, at *13 (D.N.J. Jan. 19, 2022) (dismissing a *Monell claim* where the plaintiff failed to "explain the causal link between the execution of the policy and the injury suffered"); *Hill v. City of Philadelphia*, No. CV 16-3868, 2017 WL 3263786, at *3 (E.D. Pa. Aug. 1, 2017) (dismissing a *Monell* claim where the plaintiff did not "allege any facts that provide

support for the claim that a municipal custom or policy exists, much less that an official custom or policy caused the harm alleged here").

Here, Mr. Parker fails to plead any facts demonstrating a causal connection between any alleged City custom and his alleged injuries. Specifically, he fails to plead facts showing how the alleged custom of "disregarding constitutionally protected rights such as freedom of speech" caused individual defendants to engage in excessive force, false arrest, malicious prosecution, civil conspiracy, or First Amendment retaliation. ECF No. 43 ¶ 159. Mr. Parker merely concludes that his arrest "was a result" of this custom. *Id.* He further concludes that the City's alleged custom was a "substantial moving force behind the violations of [Mr. Parker's] constitutional rights." *Id.* ¶ 16.

Furthermore, Mr. Parker likewise fails to allege how an alleged deficiency in the City's training or supervision of its employees caused, or was the "moving force," behind his alleged constitutional injuries. Again, Mr. Parker concludes that the City caused the alleged violations of his constitutional rights without any factual support to buttress this legal conclusion. *Id.* ¶ 16. Such threadbare recitations of the elements of *Monell* are insufficient to survive a motion to dismiss. *See Fowler*, 578 F.3d at 210. Because of these deficiencies, Mr. Parker's *Monell* claim should be dismissed.

## V.  CONCLUSION

For the foregoing reasons, Mr. Parker's *Monell* claim against the City should be dismissed.

Respectfully submitted:

KRYSIA KUBIAK
City Solicitor

*/s/ Hillary M. Weaver, Esq.*
Hillary M. Weaver, Esq.
Assistant City Solicitor
PA ID No. 322545
City of Pittsburgh Law Department
414 Grant Street
Pittsburgh, PA 15219
Hillary.Weaver@pittsburghpa.gov
*Counsel for Defendant City of Pittsburgh*