## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| WILLIAM PARKER, | ) | |
| Plaintiff, | ) | 2:23-CV-2102-NR |
| vs. | ) | |
| EDWARD C. GAINEY, *et al.*, | ) | |
| Defendants. | ) | |

### MEMORANDUM ORDER

**J. Nicholas Ranjan, United States District Judge**

Plaintiff William Parker attended a Juneteenth celebration in Pittsburgh in 2023. At that event, he engaged in protected First Amendment activity—specifically, criticizing Pittsburgh Mayor, Edward Gainey, who was also present. In response, Mr. Parker claims he was retaliated against by various city and county officials, including with arrest and prosecution for criminal charges that were ultimately dismissed. From these events, he brings civil-rights claims against the city and county employees who were involved. Some of the defendants have moved to dismiss the claims against them. For the reasons that follow, the Court grants in part and denies in part the motion.

### BACKGROUND

William Parker is a resident of Pittsburgh. ECF 43, ¶ 1. On June 17, 2023, Mr. Parker attended a Juneteenth celebration that included a parade on Centre Avenue. *Id.* at ¶¶ 21, 23. Also present were Pittsburgh Mayor Edward Gainey, Allegheny County Councilwoman Bethany Hallam, and the following Pittsburgh City police officers: Detective Lawrence Ferrilli, Detective Kerry Ford, Detective Michael Gay, and Chief Larry Scirotto. *Id.* at ¶¶ 21-23. During the event, Mr. Parker began verbally protesting Mayor Gainey, but Mayor Gainey ignored him. *Id.* at ¶¶ 24-26.

Detective Ford was working as part of Mayor Gainey's protective detail. *Id.* at ¶ 33. Detective Ford pushed Mr. Parker, causing him to lose his balance, but Mr. Parker continued his verbal protest of Mayor Gainey. *Id.* at ¶¶ 34-35. Detective Gay began to follow Mr. Parker and ran into him: undeterred, Mr. Parker continued his verbal protest. *Id.* at ¶¶ 36-38. Shortly after this, Councilwoman Hallam began "bumping" Mr. Parker in an attempt to dissuade him from continuing his protest. *Id.* at ¶ 38.

Mr. Parker cried out for Councilwoman Hallam to stop bumping him, after which Detective Gay approached Mr. Parker and shoved him, got into his face, and prevented Mr. Parker from continuing his protest. *Id.* at ¶¶ 39-41. After Detective Gay separated Mr. Parker from the parade, Chief Scirotto told Detective Gay to take Mr. Parker to the ground and arrest him. *Id.* at ¶¶ 43-44. After Chief Scirotto directed Detective Gay to arrest Mr. Parker, Detective Ford kicked Mr. Parker's legs out from underneath him and handcuffed him. *Id.* at ¶ 46.

After arresting Mr. Parker, Chief Scirotto walked him across the street, stating "the show is over now bitch." *Id.* at ¶ 49. Detective Ferrilli searched Mr. Parker with the assistance of Detectives Gay and Ford. *Id.* at ¶¶ 50, 145. Mr. Parker was transported to the Allegheny County Jail where he remained for 15 hours. *Id.* at ¶ 52. Mr. Parker was charged with one count of aggravated assault and four counts of disorderly conduct. *Id.* at ¶ 53. All of these charges were ultimately dismissed. *Id.* at ¶ 85.

As a result of these events, Mr. Parker filed the present lawsuit, including the operative second amended complaint. ECF 43.

The following chart summarizes Mr. Parker's claims against each defendant:[1]

---

[1] As part of the motion-to-dismiss briefing, Mr. Parker withdrew Count VI in its entirety, and Counts III, VIII, and XI as to Detective Ferrilli (although Detective Ferrilli was not named in Count XI in the complaint). ECF 58, p. 22. Mr. Parker also withdrew his abuse-of-process claim as to Councilwoman Hallam. *Id.* at p. 20 ("Mr. Parker has willfully concede[d] the Abuse of Process Claim").

| Count | Defendant(s) | Claim |
|-------|-------------|-------|
| I | Gainey/Scirotto/Gay/Ford/Hallam | Section 1983 — First Amendment Retaliation |
| II | Scirotto/Gay/Ford | Section 1983 – False Arrest |
| III | Gainey/Scirotto/Gay/Ford/Ferrilli/Hallam | Section 1983 – Malicious Prosecution (withdrawn as to Ferrili) |
| IV | Scirotto/Gay/Ford | Section 1983 – Excessive Force (Fourth Amendment) |
| V | Scirotto/Gay/Ford/Ferrilli | Section 1983 – Fourth Amendment Unlawful Search and Seizure |
| VI | Gainey/Scirotto/Gay/Ford/Hallam | Civil Conspiracy (withdrawn) |
| VII | City of Pittsburgh | Section 1983 – *Monell* |
| VIII | Scirotto/Gay/Ford/Ferrilli | Section 1983 – Failure to Intervene (Fourth Amendment) (withdrawn as to Ferrili) |
| IX | Gay/Ford/Hallam | Battery |
| X | Scirotto/Gay/Ford | False Imprisonment |
| XI | Scirotto/Gay/Ford | Malicious Prosecution |
| XII | Ford/Hallam | Abuse of Process |

The City of Pittsburgh, Mayor Gainey, Chief Scirotto, Detective Ford, Detective Gay, Detective Ferrilli, and Councilwoman Hallam filed motions to dismiss the second amended complaint.  ECF 44; ECF 46; ECF 48; ECF 54.  All of the motions are fully briefed and ready for disposition.

## DISCUSSION & ANALYSIS[2]

### I.  First Amendment retaliation claim (Count I).

Mr. Parker brings a First Amendment retaliation claim against Mayor Gainey, Chief Scirotto, Detective Gay, Detective Ford, and Councilwoman Hallam.  ECF 43.

---

[2] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Any reasonable inferences should be considered in the light most favorable to the plaintiff.  *See Lula v. Network Appliance*, 255 F. App'x 610, 611 (3d Cir. 2007) (citing *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989)).

Mayor Gainey and Councilwoman Hallam move to dismiss.  ECF 46; ECF 54.

To state a First Amendment retaliation claim, Mr. Parker "must show (1) that [he] engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).  When the claim alleges retaliation in the form of criminal prosecution, the third element, "causation[,] requires a special method of proof—the plaintiff must plead and prove the absence of probable cause." *Brantley v. Wysocki*, 662 F. App'x 138, 142 (3d Cir. 2016) (citing *Hartman v. Moore*, 547 U.S. 250, 265-66 (2006)).  Such a claim also requires another element: proof that the defendant "induced the prosecutor to bring charges that would not have been initiated without [the defendant's] urging."  *Hartman*, 547 U.S. at 262; *Pellegrino v. U.S. Transp. Sec. Admin.*, No. 09-5505, 2014 WL 3952936, at *4 (E.D. Pa. Aug. 12, 2014) (same).  As with all claims under Section 1983, the plaintiff must show that the defendants were personally involved in the alleged wrongs, *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988), and in the First Amendment retaliation context, the plaintiff must show that the defendants were personally involved "in the alleged retaliatory acts." *McIntyre v. Phillips*, No. 23-3508, 2023 WL 8096896, at *9 (E.D. Pa. Nov. 21, 2023) (dismissing First Amendment retaliation claim against defendants who were not personally involved in the alleged retaliatory conduct).

***Mayor Gainey***.  Mayor Gainey argues that he was not personally involved in any alleged retaliation and thus can't be liable for retaliation.  ECF 47, p. 10.  Mr. Parker responds that Mayor Gainey is liable for retaliation under a supervisory-liability theory.  ECF 58, pp. 5-8.  The Court finds that Mr. Parker cannot plead the predicate for supervisory liability.

The Third Circuit recognizes two types of supervisory liability.  Under the first

theory, a supervisor may be liable if he "established and maintained a policy, practice, or custom" that caused constitutional harm. *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (cleaned up). Under the second theory, a supervisor may be liable if he "participated in violating plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Id.* "Acquiescence requires both contemporaneous knowledge of the alleged wrongdoing and direct supervisory authority over the subordinate actor." *Morrison v. Varano*, No. 20-61, 2020 WL 865421, at *2 (M.D. Pa. Feb. 20, 2020). Mr. Parker fails to state a claim for supervisory liability against Mayor Gainey under either theory.

As to the first theory, Mr. Parker has not identified a policy, practice, or custom that Mayor Gainey established and maintained that caused the alleged constitutional harm at issue here. *A.M. ex rel. J.M.K.*, 372 F.3d at 586. Mr. Parker argues that Mayor Gainey is the Mayor of Pittsburgh, and as such the head policymaker of the City of Pittsburgh. ECF 58, p. 6. Mr. Parker argues "that despite the City of Pittsburgh acknowledging that the First Amendment is sacrosanct on multiple occasions they have violated the same and on at least one occasion were supposed to implement additional policy to avoid arrests such as Mr. Parker's" and that Mayor "Gainey has failed in his duty to further establish policy protecting the First Amendment, ensure the police force is trained in the First Amendment, and has allowed the practice of *contempt of cop* arrests for First Amendment protected activity to permeate the Pittsburgh Bureau of Police." *Id.* However, Mr. Parker doesn't specifically identify any policy, practice, or custom that Mayor Gainey enacted that led to the retaliation here. *See* ECF 43.[3] *Mutschler v. Downs*, No. 15-2015, 2016 WL

---

[3] Mr. Parker does discuss policies in his *Monell* claim against the City, but those allegations do not affect the analysis of his First Amendment retaliation claim against Mayor Gainey.

4689048, at *5 (M.D. Pa. Mar. 21, 2016) (stating that First Amendment retaliation claim under a theory of supervisory liability should be dismissed because the plaintiff failed to identify a specific policy that caused the alleged constitutional violation), *report and recommendation adopted*, No. 15-2015, 2016 WL 4702477 (M.D. Pa. Apr. 12, 2016).

As to the second theory, Mr. Parker has not alleged that Mayor Gainey participated in violating Mr. Parker's rights or had knowledge and acquiesced to the actions of his subordinates. Mr. Parker argues that Mayor Gainey observed Mr. Parker's protest, arrest, and confrontation with the police defendants, and that "[b]y failing to intervene in a clearly baseless arrest, failing to discipline the officers involved, refer same for any investigation to an outside agency, or contact the Allegheny District Attorney's Office regarding the arrest, Mayor Gainey acquiesced to the unlawful actions of his subordinates." ECF 58, pp. 7-8.

But Mr. Parker's argument is not supported by the allegations in the second amended complaint. Mr. Parker alleges that "Defendants took adverse action against" him by: (1) "Shoving, bumping, striking, or subjecting Mr. Parker to unwanted touching by Defendants Ford, Gay, Ferrilli, Scirotto, and Hallam;" (2) "Defendant Scirotto ordering the use of force against a peaceable Mr. Parker and his arrest;" (3) "Defendants Gay and Ford using excessive force against Mr. Parker while forcibly arresting him despite the fact that he was non-violent and compliant; and" (4) "Defendants Gay and Ford arresting Mr. Parker for exercising protected speech critical of Defendant Gainey." ECF 43, ¶ 61.a.-d. None of the foregoing averments allege that Mayor Gainey himself took adverse action, or that he directed the other defendants to take the alleged adverse actions. There also aren't any allegations that Mayor Gainey knew of and acquiesced to the alleged adverse actions. There is one lone allegation in which Mr. Parker alleges that Mayor "Gainey was present and had knowledge that Mr. Parker was being arrested and his rights violated by Defendant

Scirotto." ECF 43, ¶ 167. But this sole allegation only pleads one part of the equation—knowledge—and is not even part of Count I. Instead, it is located in Count VII, Mr. Parker's *Monell* claim against the City of Pittsburgh. *Id.* In any event, such a conclusory allegation cannot form the basis for supervisory liability. *Shepard v. Overmeyer*, No. 23-268, 2024 WL 4680410, at *4 (W.D. Pa. Nov. 5, 2024) (Lanzillo, M.J.) (holding that a conclusory allegation was not sufficient to support a claim for supervisory liability for retaliation).

As such, the Court will grant Mayor Gainey's motion to dismiss Count I.

**Councilwoman Hallam**. Councilwoman Hallam argues that Mr. Parker hasn't met the three main elements to state a claim against her—but the Court disagrees.

First, there is no question that Mr. Parker engaged in protected speech by speaking about his grievances with Mayor Gainey. *See Eichenlaub v. Twp. of Ind.*, 385 F.3d 274, 284 (3d Cir. 2004) (finding plaintiff's complaints and private grievances against government officials protected activity for First Amendment retaliation claim).

Second, the "bumping" was retaliatory because it was sufficient to deter Mr. Parker from exercising his rights—Mr. Parker alleges that Councilwoman Hallam "began bumping into Mr. Parker's right shoulder with significant force in an attempt to disrupt, dissuade, and stop Mr. Parker's criticism of Defendant Gainey" and that "Mr. Parker verbally cried out for Defendant Hallam to stop violently bumping into [his] right shoulder." ECF 43, ¶¶ 38-39. "The test in [the Third] Circuit for determining whether an action is treated as retaliation is whether it is sufficient to deter a person of ordinary firmness from exercising his constitutional rights." *Miller v. Mitchell*, 598 F.3d 139, 152 (3d Cir. 2010) (cleaned up). Mr. Parker specifically pleads that Councilwoman Hallam's "bumping" was an adverse action and was done in a violent manner as he was speaking. ECF 43, ¶¶ 38-39, 61.a. At this juncture,

these allegations are sufficient to plead the second element.

Third, Mr. Parker has sufficiently pled a causal connection between his alleged protected activity and Councilwoman Hallam's "bumping" because he alleges that she began bumping him while he was protesting "in an attempt to disrupt, dissuade, and stop Mr. Parker's criticism of Defendant Gainey." *Id.* at ¶ 38; s*ee Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 759 (3d Cir. 2019) (describing causation).

The Court need not address the issue of whether probable cause existed for Mr. Parker's alleged retaliatory prosecution, because as explained below in the section discussing Mr. Parker's malicious-prosecution claim, Councilwoman Hallam was not personally involved in the prosecution and thus cannot be held liable on that basis.

As such, the Court will deny Councilwoman Hallam's motion to dismiss Count I, but limit the scope of Mr. Parker's claim to the "bumping" and not the prosecution.

## II.    Federal and state-law malicious-prosecution claims (Counts III and XI).

Mr. Parker brings a Section 1983 malicious-prosecution claim against Mayor Gainey, Chief Scirotto, Detective Gay, Detective Ford, Detective Ferrilli, and Councilwoman Hallam. ECF 43, Count III. Mayor Gainey, Chief Scirotto, Detective Gay, and Councilwoman Hallam seek to dismiss this claim. ECF 46; ECF 48; ECF 54. Mr. Parker also brings a state-law malicious-prosecution claim against Chief Scirotto, Detective Gay, and Detective Ford. ECF 43, Count XI. Chief Scirotto and Detective Gay move to dismiss this claim. ECF 48.

To state a malicious-prosecution claim under Section 1983, the plaintiff must show that the defendant was acting under color of state law and that the defendant deprived the plaintiff of a constitutional right. *Piecknick v. Com. of Pa.*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). "To prevail on a malicious prosecution claim under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was

initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *McKenna v. City of Phila.*, 582 F.3d 447, 461 (3d Cir. 2009).

"Pennsylvania law requires that in a malicious prosecution claim, a Plaintiff must prove the Defendants (1) instituted the proceedings (2) without probable cause and (3) with actual malice and (4) that the proceedings terminated in favor of the Plaintiff." *Pansy v. Preate*, 870 F. Supp. 612, 617 (M.D. Pa. 1994), *aff'd*, 61 F.3d 896 (3d Cir. 1995). Malice includes ill will and the use of a prosecution for improper purpose, and "can be inferred from the absence of probable cause." *Id.* To prove a malicious-prosecution claim, a plaintiff "must show *both* that the criminal proceeding ended in his favor *and* that the defendant initiated the proceeding without probable cause." *Allen v. New Jersey State Police*, 974 F.3d 497, 504 (3d Cir. 2020) (emphasis original).

Because Defendants' motions to dismiss focus on the first element, *i.e.*, whether the defendants initiated the proceeding, as well as the question of supervisory liability, the Court will analyze the federal and state claims together.

***Mayor Gainey***. Mayor Gainey argues that Mr. Parker fails to state a claim for malicious prosecution against him for two reasons: (1) Mr. Parker has not sufficiently alleged facts to support supervisory liability; and (2) even if Mr. Parker had alleged sufficient facts as to supervisory liability, Mr. Parker has failed to allege that Mayor Gainey initiated criminal proceedings against Mr. Parker. ECF 47, pp. 4-6.

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (emphasis original). The defendant "must have been involved personally, meaning through personal direction or actual knowledge and

acquiescence, in the wrongs alleged." *McKenna*, 582 F.3d at 460.  Thus, the only way that Mayor Gainey can be held liable for malicious prosecution under a theory of supervisory liability is if Mayor Gainey "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 (3d Cir. 2010) (cleaned up).

Here, there are no allegations in the second amended complaint that support a malicious-prosecution claim against Mayor Gainey under a theory of supervisory liability.  The second amended complaint alleges that Mayor Gainey was at the parade, "chose to ignore Mr. Parker," and instructed Detective Ford to leave Mr. Parker alone.  ECF 43, ¶¶ 22, 26, 83.d.  The only allegation in the second amended complaint that could potentially support Mr. Parker's malicious-prosecution claim against Mayor Gainey under a theory of supervisory liability is that Mayor "Gainey was present and had knowledge that Mr. Parker was being arrested and his rights violated by [Chief] Scirotto." *Id.* at ¶ 167.

Accepting the well-pleaded allegations of the second amended complaint as true, it is clear that there are sufficient allegations to show that Mayor Gainey was present at the parade and knew that Mr. Parker was being arrested.  But simply being present at an arrest is not enough.  The Third Circuit has held that mere presence of the supervisor, without more, does not amount to knowledge or acquiescence of subordinates' violation. *Santiago*, 629 F.3d at 134 (affirming district court dismissal of supervisory-liability claim because a police lieutenant's presence alone did not lead to a reasonable inference that lieutenant was aware or acquiesced in subordinates' use of excessive force); *see McKenna*, 582 F.3d at 460-61 (affirming grant of summary judgement because police sergeant's presence after defendant was arrested did not amount to knowledge and acquiescence of subordinates' use of excessive force).  To succeed on his claim, Mr. Parker must show that Mayor Gainey

had knowledge of *and* acquiesced to his subordinate's actions. *See id.* at 460. Moreover, even if the allegations show that Mayor Gainey had knowledge of the arrest, there are no allegations that he had knowledge of the initiation of a criminal proceeding, or that he acquiesced to the arrest or initiation of the criminal proceeding.

Thus, the Court will grant Mayor Gainey's motion to dismiss Count III.

**Chief Scirotto**. Chief Scirotto argues that Mr. Parker fails to state a claim against him for malicious prosecution because Mr. Parker fails to allege that Chief Scirotto "provided information, let alone false or misleading information, to Detective Ford or a prosecutor." ECF 49, 5. In response, Mr. Parker argues that Chief Scirotto is liable for malicious prosecution under a supervisory liability theory because he was present at the parade and directed Detectives Gay and Ford to arrest Mr. Parker; and also that Chief Scirotto "failed to disclose exculpatory evidence to prosecutors, omitted material information from the reports, and interfered with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute" because he "was a direct witness of Mr. Parker's protected speech and battery by [Councilwoman] Hallam." ECF 58, pp. 10-11.

The principles of supervisory liability addressed in the above section on Mayor Gainey's motion to dismiss also apply to Chief Scirotto's motion to dismiss.

Typically, prosecutors initiate criminal proceedings, but police officers can be held liable for malicious prosecution if they knowingly provide false information, omit information, or fail to provide exculpatory information. *Henderson v. City of Phila.*, 853 F. Supp. 2d 514, 518 (E.D. Pa. 2012) ("Although prosecutors rather than police officers are generally responsible for initiating criminal proceedings, an officer may, however, be considered to have initiated a criminal proceeding if he or she knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion." (cleaned up)); *Garcia v. Micewski*, No. 97-5379, 1998 WL 547246, at *9 (E.D. Pa. Aug. 24, 1998) ("An individual can be liable for

malicious prosecution if he fails to disclose exculpatory evidence to prosecutors, makes false or misleading reports to the prosecutor, omits material information from the reports, or otherwise interferes with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute." (cleaned up)).

Mr. Parker points the Court to paragraphs 43-49 and 50-53 of the second amended complaint as allegations establishing that Chief Scirotto "ordered, directed, participated in, had knowledge of and acquiesced in his subordinates['] violations of Mr. Parker[']s civil rights."  ECF 58, p. 11.  Mr. Parker alleges that Chief Scirotto directed Detectives Gay and Ford to arrest him.  ECF 43, ¶¶ 43-45, 93, 105.  However, even if these allegations are sufficient to plead that Chief Scirotto had knowledge of and acquiesced to Mr. Parker's arrest, there are no allegations that Chief Scirotto had knowledge of the initiation of a criminal proceeding, or that he acquiesced to the initiation of the criminal proceeding.  There also aren't any allegations that Chief Scirotto gave false information to prosecutors or otherwise withheld exculpatory evidence.

As such, the Court will grant Chief Scirotto's motion to dismiss Counts III and XI.

**_Detective Gay_**.  Like Chief Scirotto, Detective Gay argues that Mr. Parker fails to state a claim for malicious prosecution against him because "Mr. Parker's Second Amended Complaint is devoid of any allegations that Chief Scirotto, Detective Gay, or Detective Ferrilli provided information, let alone false or misleading information, to Detective Ford or a prosecutor."  ECF 49, p. 5.

Mr. Parker argues that Detective Gay "failed to disclose exculpatory evidence to prosecutors, limited material information from the reports, and interfered with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute."  ECF 58, p. 11.  The crux of Mr. Parker's argument is that because Detective Gay witnessed "Mr. Parker's protected speech and battery by

[Councilwoman] Hallam[,]" Detective Gay is liable for malicious prosecution. *Id.* at 12.

As stated above, police officers can be held liable for malicious prosecution if they knowingly provide false information, omit information, or fail to provide exculpatory information to the prosecutor. *Henderson*, 853 F. Supp. 2d at 518-19.

Here, Mr. Parker points the Court to Paragraphs 21-53 of the second amended complaint, arguing that these allegations support the malicious-prosecution claim because "Detective Gay was a direct witness of Mr. Parker's protected speech and battery by [Councilwoman] Hallam" and "had a duty to correct [] lies that Detective Ford authored and provide the truth to the prosecutor, which he failed to do." ECF 58, pp. 11-12. Defendants argue that "Mr. Parker's Second Amended Complaint contains no facts that Detective Gay authored any reports relative to this incident, had any contact with prosecutors, or was aware that the affidavit authored by Detective Ford contained incorrect information." ECF 59, pp. 6-7; *see* ECF 43.

After careful review, the Court disagrees. It is reasonable to infer from Detective Ford's affidavit that he conferred with Detective Gay in drafting the affidavit. ECF 43-1, pp. 5-7. The affidavit states that Detective Ford "was being assisted by [Detective] Gay." *Id.* at 6. The affidavit also details Detective Gay's participation in the incident. *Id.* At this stage of the case, this is sufficient for Mr. Parker's malicious-prosecution claims against Detective Gay to proceed.

Because it is reasonable to infer that Detective Gay withheld exculpatory information from prosecutors or omitted information from a report, the Court will deny Detective Gay's motion to dismiss Counts III and XI.

***Councilwoman Hallam***. Councilwoman Hallam argues that Mr. Parker fails to state a claim against her for malicious prosecution because there are no allegations that she filed criminal charges against Mr. Parker. ECF 55, p. 7. In response, Mr. Parker argues that Councilwoman Hallam is liable for malicious

prosecution because she initiated the chain of events by "bumping" Mr. Parker and because she was a named victim in the complaint and "failed for a significant amount of time to come forward and ultimately set the record straight as to Mr. Parker." ECF 58, p. 13 (citing ECF 43, ¶¶ 21-86).

Even accepting Mr. Parker's allegations as true and drawing all reasonable inferences in his favor, his allegations are not sufficient to support a malicious-prosecution claim. There are no allegations that Councilwoman Hallam gave false information to prosecutors or otherwise withheld exculpatory evidence. In fact, the allegations in the second amended complaint state that Councilwoman Hallam did inform the Detectives and ultimately the Allegheny County District Attorney's Office that she was not a victim, that she did not wish to be named as an alleged victim, and that she would not participate or testify in the prosecution of Mr. Parker. ECF 43, ¶ 83.h. There are no factual allegations to support a malicious-prosecution claim against Councilwoman Hallam.

As such, the Court will grant Councilwoman Hallam's motion to dismiss Count III.

## III. Unlawful search and seizure (Count V).

Mr. Parker brings a claim for unlawful search and seizure in violation of the Fourth Amendment under Section 1983 against Chief Scirotto, Detective Gay, Detective Ford, and Detective Ferrilli. ECF 43. Chief Scirotto, Detective Gay, and Detective Ford move to dismiss. ECF 48.

"The elements of a § 1983 claim for unreasonable search and seizure are: (1) the actions of the police officers constituted a search or seizure within the meaning of the Fourth Amendment; and (2) the actions were unreasonable in light of the surrounding circumstances." *Balzora v. Balatgek*, No. 24-522, 2024 WL 625275, at *4 (E.D. Pa. Feb. 13, 2024). As with all Section 1983 claims, the defendant must have been personally involved in the constitutional violation to be held liable. *Lozano v.*

*New Jersey*, 9 F.4th 239, 242 (3d Cir. 2021) ("It is equally true, though, that officers must be personally involved in a constitutional rights violation to be held liable for it."). To show personal involvement in the Fourth Amendment unreasonable search and seizure context, the plaintiff must allege that the defendant actively participated in the search. *Strunk v. E. Coventry Twp. Police Dep't*, 674 F. App'x 221, 225 (3d Cir. 2016) (affirming district court's dismissal of Section 1983 unreasonable search claim because "other officers not named in the action executed the search").

***Chief Scirotto***. Chief Scirotto argues that this claim should be dismissed as to him because he was not personally involved as required under Section 1983 since he did not actively participate in the search. ECF 49, pp 8-9. In response, Mr. Parker argues that Chief Scirotto is liable for unlawful search and seizure under a failure-to-intervene theory—in other words, that Chief Scirotto failed to intervene to stop the unlawful search. ECF 58, p. 16.

This argument fails for two reasons.

First, the second amended complaint doesn't plead this theory within Count V. True, in Count VII, Mr. Parker asserts a stand-alone failure-to-intervene claim against Chief Scirotto, but that count only includes allegations related to a failure to intervene in Mr. Parker's alleged false arrest and a failure to intervene with the use of excessive force against Mr. Parker. ECF 43, ¶¶ 168-172. So Count VII can't be the basis of a failure-to-intervene claim against Chief Scirotto related to the alleged unreasonable search and seizure.

Second, there is no such thing as a failure-to-intervene claim in the context of an unlawful search. The Third Circuit has recently stated: "Though we have recognized a right to have a government actor intervene when the underlying constitutional violation involves excessive force or sexual assault of a person in custody or detention, we have since concluded that our precedent does not establish, let alone clearly establish, a right to intervention in other contexts." *Thomas v. City*

*of Harrisburg*, 88 F.4th 275, 285 (3d Cir. 2023) (granting qualified immunity to officers for failure to intervene in the violation of a right to medical care), *cert. denied sub nom. Foose v. Thomas*, 145 S. Ct. 141 (2024), *and cert. denied sub nom. Kinsinger v. Thomas*, 145 S. Ct. 141 (2024); *see also  Weimer v. County of Fayette*, 972 F.3d 177, 190-91 (3d Cir. 2020) (finding that the right to intervene hasn't been clearly extended to intervention to prevent unconstitutional investigations); *see also Ricks v. Shover*, 891 F.3d 468, 479 (3d Cir. 2018) (discussing failure to intervene in sexual abuse context); *E.D. v. Sharkey*, 928 F.3d 299, 307-08 (3d Cir. 2019) (same).

District courts routinely dismiss failure-to-intervene claims that fall outside of the excessive force or custodial sexual assault context. *Ogrod v. City of Phila*, 598 F. Supp. 3d 253, 273 (E.D. Pa. 2022) (dismissing failure-to-intervene claim because there is "no clear authority" that a duty to intervene exists outside of the excessive force context); *see also Wertz v. Inmate Calling Sols., LLC*, No. 23-1045, 2024 WL 989405, at *7 (W.D. Pa. Mar. 7, 2024) (Weigand, J.) (dismissing claim for failure to intervene with recording of attorney-client communications because it was outside the excessive-force context); *Nesgoda v. Rooney*, No. 22-253, 2023 WL 11487839, at *6-7 (M.D. Pa. May 17, 2023) (dismissing failure-to-intervene claim in criminal arrest and prosecution context), *report and recommendation adopted*, No. 22-253, 2024 WL 2094009 (M.D. Pa. May 9, 2024).

Because the claim is not appropriately pled and is otherwise unsupported as a matter of law, the Court will grant Chief Scirotto's motion to dismiss Count V.

***Detective Gay and Detective Ford***.  Mr. Parker has sufficiently pled an unreasonable-search claim against Detectives Gay and Ford.  Mr. Parker alleges that the search "was performed by [Detective] Ferrilli with the assistance of [Detectives] Gay and Ford."  ECF 43, ¶ 145.  While Mr. Parker does not go into any detail about what that assistance looked like, this allegation is enough when understood in the context of all of the allegations, and so is enough to proceed into discovery.  *Strunk*,

674 F. App'x at 225 (stating that only defendants who actively participate in an alleged illegal search can be liable under section 1983).

Thus, the Court will deny Detective Gay and Detective Ford's motion to dismiss Count V.

## IV.    Civil Conspiracy (Count VI).

Mayor Gainey (ECF 46), Chief Scirotto, Detective Ford, Detective Gay (ECF 48), and Councilwoman Hallam (ECF 54) move to dismiss Mr. Parker's civil conspiracy claim. In his brief, Mr. Parker withdrew Count VI in its entirety. ECF 58, p. 22. As such, the Court will dismiss the civil-conspiracy claim.

## V.    *Monell* claim (Count VII).

Mr. Parker brings a *Monell* claim against the City of Pittsburgh. ECF 43, Count VII. The City moves to dismiss. ECF 44. The City argues that Mr. Parker's *Monell* claim fails for three reasons. ECF 45, pp. 1-2. The City argues that: (1) Mr. Parker fails to identify a "custom;" (2) Mr. Parker fails to allege sufficient constitutional violations to show a failure to train or supervise; and (3) Mr. Parker "fails to sufficiently plead a causal connection between the alleged customs, and/or failures identified in his Second Amended Complaint and his alleged constitutional injuries." *Id.* at 1-2.

In general, municipalities, like the City, are liable under Section 1983 "only if they have caused a constitutional tort through a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *LaVerdure v. Cnty. of Montgomery*, 324 F.3d 123, 125 (3d Cir. 2003) (cleaned up). Within this framework, the Third Circuit has clarified that there are three ways a municipality can be liable for the torts of its employees. *McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005).

"First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the

government entity; second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy; third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes." *Id.* (cleaned up). "Thus, a plaintiff can establish the existence of a custom or policy by showing either that the decision-maker possessing final authority to establish a municipal policy did so by issuing an official statement of policy or that a governmental custom developed when the official acquiesced to a course of conduct such that it operated as law." *Peterson v. Allegheny Cnty.*, No. 21-78, 2022 WL 280948, at *20 (W.D. Pa. Jan. 31, 2022) (Wiegand, J.) (cleaned up).

Mr. Parker's *Monell* claim fails for the following reasons.

First, Mr. Parker has failed to allege a custom that caused a constitutional violation. A custom is a practice of state officials "so permanent and well settled as to virtually constitute law." *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996) (cleaned up). Mr. Parker alleges that "[h]is arrest was a result of a custom of the City of Pittsburgh, particularly through the Bureau of Police, disregarding constitutionally protected rights such as freedom of speech." ECF 43, ¶ 159. In support of this allegation, Mr. Parker points to two cases that he submits are examples of the alleged custom: (1) *Hackbart v. City of Pittsburgh*, Case No. 07-cv-157; and (2) *Rulli v. City of Pittsburgh*, Case No. 20-cv-965. *Id.* Mr. Parker alleges that "[t]he continual conscious disregard of protesters' right of freedom of speech constitutes a custom within the City of Pittsburgh and the City of Pittsburgh Bureau of Police." *Id.* at ¶ 160.

While the Third Circuit hasn't "considered whether civil lawsuits alleging constitutional violations" can support an inference that a "municipality knew about and acquiesced in a custom" resulting in a constitutional violation, "[o]ther courts that have considered this question have determined that a plaintiff's citation to a few

-18-

lawsuits involving claims of alleged constitutional violations is not probative of the existence of an underlying policy by a municipality." *Gonzalez v. Borough of Red Bank*, No. 18-13009, 2020 WL 2029338, at *9 (D.N.J. Apr. 28, 2020) (cleaned up).

To impose liability based on prior lawsuits, "more information about such lawsuits is required, such as whether they resulted in a finding that a constitutional violation occurred and whether the municipality's response to the suits could demonstrate deliberate indifference to the risk of future constitutional violations." *Pharaoh v. Dewees*, No. 14-3116, 2016 WL 2593842, at *5 (E.D. Pa. May 4, 2016). And if such lawsuits were settled without a finding of liability on the defendants' part, that fact renders the evidence of the former lawsuits even less persuasive. *Hernandez v. Nielson*, No. 00-50113, 2002 WL 31804788, at *1 (N.D. Ill. Dec. 13, 2002) (dismissing claim for *Monell* liability in part because the evidence supporting the claim consisted of settled lawsuits). Mr. Parker provides none of this information as to the two other lawsuits.

Mr. Parker also cannot rely on his own arrest as sufficiently alleging a custom because "[a] single incident of police misbehavior by a single policeman is insufficient as sole support for an inference that a municipal policy or custom caused the incident." *Brown v. City of Pittsburgh*, 586 F.3d 263, 292 (3d Cir. 2009) (cleaned up). Accordingly, Mr. Parker has failed to allege the existence of a custom sufficient to state a claim for municipal liability.

Second, Mr. Parker hasn't sufficiently alleged a failure-to-train claim. Mr. Parker sets forth the standard for such a claim, but then doesn't include enough allegations to show either a pattern of similar constitutional violations by untrained employees or deliberate indifference on the part of policymakers. ECF 43, ¶¶ 161-167. At most, Mr. Parker baldly asserts that "Defendants Scirotto and Gainey showed deliberate indifference to the deprivation of rights of freedom of speech and unlawful arrest demonstrating a continued pattern and practice within the City of

Pittsburgh." *Id.* at ¶ 164.   Without allegations about a pattern of similar constitutional violations, personal involvement by Chief Scirotto and Mayor Gainey, or allegations as to the training the officers received, Mr. Parker cannot state a claim. *Peterson*, 2022 WL 280948, at *21 (dismissing *Monell* claim because plaintiffs didn't allege "any pattern of similar constitutional violations" and "offered no well-pled factual allegations as to the training [the municipal entity] does (or does not provide) to its [employees], such that the particular alleged deficiencies in training can be discerned").

As such, the Court will grant the City's motion to dismiss Count VII.

## VI. Abuse of process (Count XII).

Councilwoman Hallam moves to dismiss Mr. Parker's abuse-of-process claim. ECF 54.  Mr. Parker concedes this claim.  ECF 58, p. 20 ("Mr. Parker has willfully concede[d] the Abuse of Process Claim").  As such, the Court will dismiss the abuse-of-process claim against Councilwoman Hallam.

## VII. Counts against Detective Ferrilli (Counts III, VIII, and XI).

Mr. Parker withdrew Counts III, VIII, and XI as to Detective Ferrilli.  ECF 58, p. 22.  As such, the Court will grant Detective Ferrilli's motion to dismiss those counts.  ECF 48.

<u>**CONCLUSION**</u>

For these reasons, this **23rd day of July, 2025**, it is hereby **ORDERED** that:

(1) The City of Pittsburgh's motion to dismiss Count VII (ECF 44) is **GRANTED**;

(2) Mayor Gainey's motion to dismiss Counts I, III, and VI (ECF 46) is **GRANTED**;

(3) Chief Scirotto's motion to dismiss Counts III, V, VI, and XI (ECF 48) is **GRANTED**;

(4) Detective Ford's motion to dismiss (ECF 48) is **GRANTED** as to Count VI

and **DENIED** as to Count V;

(5) Detective Gay's motion to dismiss (ECF 48) is **GRANTED** as to Count VI and **DENIED** as to Counts III, V, and XI;

(6) Detective Ferrilli's motion to dismiss Counts III, VIII, and XI (ECF 48) is **GRANTED**;

(7) Councilwoman Hallam's motion to dismiss (ECF 54) is **DENIED** as to Count I and **GRANTED** as to Counts III, VI, IX, and XII.

The dismissed counts shall all be **DISMISSED WITH PREJUDICE.** This is so because the complaint has already been amended twice, Mr. Parker already had an opportunity and right to amend in response to the motions to dismiss (which he partially did by withdrawing certain claims), and Mr. Parker has not requested amendment in the course of his briefing. So allowing any leave to amend would be inequitable. *Nelson v. Pennrose Mgmt. Reg'l*, No. 14-1063, 2015 WL 222384, at *3 (W.D. Pa. Jan. 14, 2015) (McVerry, J.) (dismissing case with prejudice where allowing a "third bite at the apple would not be equitable").

BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge